IN RE JUVENILE APPEAL (84–AB) (11429)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued October 12, 1983—decision released February 21, 1984

*Leon O. Gross,* for the appellants (parents of the juvenile).

*David K. Jaffe,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (commissioner of the department of children and youth services).

*Brian T. Mahon,* for the appellee (juvenile).

SPEZIALE, C. J. This is an appeal by the parents of a minor child, T, from two judgments of the trial court, one adjudicating T to be neglected and the other terminating their parental rights over T. The child's medical history showed that when T was six weeks old he was brought to Meriden-Wallingford Hospital for treatment of a bleeding mouth; at ten weeks old he was treated for multiple facial bruises. The parents contended throughout that these injuries were the results of accidents. On May 16, 1981, when the child was almost four months old, he was hospitalized for treatment of a swollen leg. Hospital x-rays indicated at least ten recent fractures in different parts of the body, in various stages of healing. Expert testimony indicated that the fractures resulted from a series of traumatic

incidents. The parents had no explanation for these injuries. Also, two human bite marks were discovered on T's shoulder.

On May 20, 1981, the commissioner of the department of children and youth services (hereinafter DCYS) filed two separate petitions, alleging in one that T was neglected and in the other that termination of the parental rights was necessary. An order of temporary custody was issued immediately.[1]

A hearing on both petitions was held before the trial court on January 29, 1982, February 4, 1982, February 5, 1982, and February 8, 1982. Evidence relating to the adjudicatory and dispositive phases of both the neglect petition and the termination of parental rights petition was heard. On February 9, 1982, the trial court notified the parties that "the mandated social study" would be filed with the court by February 11, 1982.[2] The trial court further advised that if any party desired a hearing in order to cross-examine the maker of the social study or to put on further evidence as to the disposition of either petition it would grant such a hearing. On February 10, 1982, the parents filed a motion to dismiss the petition to terminate parental rights

[1] General Statutes § 46b-129 (b) provides for immediate temporary custody upon the filing of a petition for neglect where "there is reasonable cause to find that the child's or youth's condition or the circumstances surrounding his care require that his custody be immediately assumed to safeguard his welfare . . . ." A subsequent hearing on the need for temporary care and custody must be held within ten days. In the instant case the petition of neglect filed on May 20, 1981, included a request for immediate temporary custody. On May 26, 1981, a hearing was held on the continued need for emergency temporary care. The hearing on the allegations of neglect was originally scheduled for June 9, 1981, but it was continued until January 29, 1982, to allow for extensive physical and psychological profiles.

[2] Practice Book § 1044 provides for a written report as to the physical and mental status of the child and parents. No disposition of a case may be made until the study has been submitted to the court. See also General Statutes §§ 46b-129 (c) and 45-61f (c). The social study filed on February 4, 1982, was an update to the original mandated social study filed on January 29, 1982.

based, inter alia, on the trial court's failure to "receive the mandatory study" and "make the mandatory study available to counsel" prior to the dispositional hearing on the neglect and termination of parental rights petitions. The trial court denied the motion to dismiss but stated that it would treat the motion as a request for a further dispositional hearing which it granted.

On February 16, 1982, the trial court adjudicated T to be a neglected child "by far more than the required fair preponderance of the evidence." The further dispositional hearing took place on February 19, 1982, and March 4, 1982. On April 2, 1982, the trial court rendered its final judgment on each petition, this time adjudicating T to be a neglected child "by clear and convincing evidence"[3] and also finding "by clear and convincing proof that . . . grounds exist to terminate the parental rights of the parents."[4] See General Statutes § 45-61f (d).

The parents appealed claiming that the trial court erred: (1) in its failure to require DCYS to provide supportive services in an attempt to reunite the family;

---

[3] The trial court's finding of February 16, 1982, that T was a neglected child "by far more than the required fair preponderance of the evidence" was not a final judgment on the neglect petition because it did not provide for disposition of the neglect petition. The court reiterated its finding of the fact of neglect in its April 2, 1982 final judgment concerning both the neglect petition and the termination of parental rights petition. In its final judgment of April 2, 1982, however, the trial court specifically found T to be neglected "by clear and convincing evidence" rather than by "far more than the required fair preponderance of the evidence" as in its February 16, 1982 decision.

[4] At the time of the hearings on the petitions, parental rights could be terminated on the basis of a fair preponderance of the evidence. Practice Book § 1049 (prior to amendment of July 26, 1983). On March 24, 1982, however, the United States Supreme Court held that the use of a fair preponderance of the evidence standard in the termination of parental rights was unconstitutional. *Santosky* v. *Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Practice Book § 1049 and General Statutes § 45-61f (d) subsequently were amended to require clear and convincing evidence to terminate parental rights.

(2) in its failure to have the mandated social study filed and made available to the parents prior to the hearing; (3) in its use of the fair preponderance of evidence as the standard of proof in the adjudicatory phase of the proceedings; and (4) in changing the standard of proof between the adjudicatory phase and the dispositive phase of the proceedings. We find no error.

## I

### SUPPORTIVE SERVICES

The parents claim that DCYS failed to provide assistance to the parents in an attempt to reunite the family. While this issue has not been properly preserved,[5] "[t]his court may . . . consider claims not properly assigned and will sometimes examine them so as to see that no substantial injustice has been done." *State* v. *Anonymous,* 179 Conn. 155, 159, 425 A.2d 939 (1979). See Practice Book § 3063. The primary concern of DCYS is the safety of T. Family integrity can be the goal of DCYS only when such reunion will not endanger the safety of the child. "Where *appropriate,* the agency can and must take unilateral action *either* to reunite families *or* to terminate parental rights as expeditiously as possible to free neglected children for placement and adoption in stable family settings." (Emphasis added.) *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 292, 455 A.2d 1313 (1983). Because there was sufficient evidence that T could not be safely returned to his parents, the trial court did not err in failing to require DCYS to provide supportive services in an attempt to reunite the family.

---

[5] The parents discuss the issue of supportive services in their brief but their claim fails to refer to pertinent information in the record or the transcript. The brief thus fails to comport with Practice Book § 3060F (b) and (c).

## II

### MANDATED SOCIAL STUDY

The parents also claim error in the trial court's failure to have the mandated social study filed and made available to the parents prior to hearing evidence on the dispositional phase. Practice Book § 1044 requires DCYS to prepare a case study in each petition for a neglected child.[6] While there is no requirement that the adjudicatory and dispositional hearings be held separately; *State* v. *Anonymous,* supra, 172; the study must be submitted to the court before any dispositional decision is made. Practice Book § 1044 (1). A social study was filed January 29, 1982, the day the hearing began. Following adjudication of neglect, the trial court requested an updated study to be filed by February 11, 1982. The trial court did not render its decision on disposition until April 2, 1982, having given the parties an opportunity to respond to the updated study. Thus, the court did comply with Practice Book § 1044 (1) because the study was submitted before any dispositional decision was made.

---

[6] Practice Book § 1044 provides in relevant part that: "(1) Upon adjudication of neglect, the court may admit into evidence any testimony relevant and material to the issue of the disposition, but no disposition may be made by the court until the mandatory study made by the commissioner of social services pursuant to Gen. Stat., § 51-310 (c), has been submitted to the court.

"(2) As a statutorily mandated document, the study by the commissioner of social services shall, upon its receipt and without any formal offer thereof and without its being marked as an exhibit become a part of the record.

"(3) The mandatory social investigation or any other written report or social record made available to the court shall be accessible to counsel, who shall be responsible for preserving the confidentiality thereof and who shall return any notes, copies, or abstractions thereof upon the conclusion of the juvenile court hearing.

"(4) In the absence of counsel, the basic facts and conclusions in said records shall, subject only to the limitations set forth in paragraph (5) hereof,

Furthermore, it was at the parents' request that evidence relating to both adjudication and disposition was heard at the same hearing; the trial court often cautioned counsel for the parents that certain testimony went to disposition rather than to adjudication.[7] The trial court was correct in concluding therefore that the parents waived any objection they might have had to the combined hearing.

The purpose of the social study is to put parents on notice of allegations that need to be explained or denied. The respondents must have an opportunity "to refute or rebut the contentions with which they disagree." Practice Book § 1044 (4). The parents had such an opportunity because the trial court held further hearings after the updated social study was filed. Thus there was no error in the court's failure to have the updated social study filed before the hearing commenced.

be read or summarized to the respondents so that they may have an opportunity to refute or rebut the contentions with which they disagree."
See footnote 2, supra.

[7] On February 4, 1982, counsel for the parents requested that evidence relating to disposition be allowed before an adjudication of neglect:

"MR. GROSS: . . . as we discussed last Friday, that, since Dr. Renshaw comes from Newington Hospital, that I would be allowed to question him today concerning the second phase of the hearing. The dispositive—

"THE COURT: Okay. Well, why don't we finish on the adjudicative phase first.

\* \* \*

Any further questions for the doctor on the adjudicatory phase? Now, you want to get into disposition. And this would be a witness whom you would call on your behalf? Is that right?

"MR. GROSS: I would . . . ."

Again, the following day, parents' counsel offered dispositional evidence:

"THE COURT: This is strictly dispositional? Have we gotten past the—

"MR. GROSS: Yes, yes, this is Your Honor. Again, he's from out of town and I had to get him in at a certain time. We've been through this before. I thought there was no problem with that today.

\* \* \*

"THE COURT: This is a dispositional question, I take it?
"MR. GROSS: Well, we have him here, Your Honor. We agreed that—
"THE COURT: Sure. No. That's fine."

## III

### Applicable Standards of Proof

The parents contend that the trial court adjudicated T to be a neglected child using a fair preponderance of the evidence standard. On March 24, 1982, after T had been adjudicated a neglected child but before the trial court ruled on the disposition of the neglect petition or on the termination of parental rights petition, the United States Supreme Court held that termination of parental rights must be based upon clear and convincing evidence. *Santosky* v. *Kramer*, 455 U.S. 745, 747–48, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The trial court's memorandum of decision, dated April 2, 1982, used the clear and convincing standard of proof both in reiterating its finding that T was neglected[8] and in ordering parental rights terminated. The parents argue that because the hearings on the petitions were not "bifurcated," and because the trial court on the neglect petition had initially relied upon the fair preponderance standard of proof in finding neglect, it necessarily used the same fair preponderance standard of proof on the termination of parental rights petition. We disagree.

The petition for neglect and the petition to terminate parental rights are separate and distinct petitions. Where a neglect petition is filed, the court first adjudicates whether there is neglect. See Practice Book § 1042. Only when a finding of neglect is made does the court move on to the dispositional phase of the neglect petition. See Practice Book § 1044. Disposition in a neglect petition may take one of a number of forms, including return to parents, return to parents with a protective order, foster care placement, or the initiation of proceedings to terminate parental rights.

---

[8] See footnote 3, supra.

The termination of parental rights petition involves its own specific elements.[9] Where such a petition has been brought pursuant to General Statutes § 45-61f (d) (2), as in this case, the trial court first determines whether the subject child "has been denied, by reason of acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being." General Statutes § 45-61f (d) (2). Once that has been found the court considers whether "these parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not, in the best interests of the child, be permitted to exercise, parental rights and duties." Id. While termination of parental rights by petition may be the disposition following a finding of neglect on a neglect petition, there are two separate actions and each petition has its own specific requirements.

## A

### THE NEGLECT PETITION

"The Connecticut legislature has declared: 'The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse, investigation of such reports by a social agency, and provision of services, where needed, to such child and family.' General Statutes § 17-38a (a)." *In re Juvenile Appeal (83–CD),* 189 Conn. 276, 283, 455 A.2d 1313 (1983). See *State* v. *Anonymous,* 179 Conn. 155, 171, 425 A.2d 939 (1979).

---

[9] General Statutes § 45-61f (d) provides for a number of grounds warranting termination of parental rights. See footnote 12, infra. DCYS sought to terminate parental rights in this case pursuant to § 45-61f (d) (2).

In *In re Juvenile Appeal (83–CD)*, supra, we held that "the standard of proof applicable to temporary custody proceedings pursuant to § 46b-129 (b) is a fair preponderance of the evidence." Id., 283. General Statutes § 46b-129 (b) concerns temporary custody in DCYS *before* an adjudication of neglect. As to the actual adjudication of neglect, Practice Book § 1043 provides that "[t]he allegations of a neglect petition shall be proved, as in a regular civil proceeding, by a fair preponderance of the evidence." We hold today that this is the proper standard for a neglect petition. See also *Matter of the Appeal in Cochise County, Etc.*, 133 Ariz. 157, 650 P.2d 459 (1982); *People in Interest of O.E.P.*, 654 P.2d 312 (Colo. 1982); *Matter of Linda C.*, 86 App. Div. 2d 356, 451 N.Y.S.2d 268 (1982).

"Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the factfinder turns on both the nature of the private interest threatened and the permanency of the threatened loss." *Santosky*, supra, 758. In the neglect proceeding, as in the temporary custody proceeding prior to an adjudication of neglect, "[t]he child, of course, has an interest both in safety and in family integrity. The state, as parens patriae, represents the safety interest of the child in custody proceedings. This interest must be balanced against the combined family integrity interests of parent and child, which are represented by the parent." *In re Juvenile Appeal (83–CD)*, supra, 298. While an adjudication of neglect may lead to removal of a child from parental custody pending investigation and resolution of the child's circumstances, removal is only one of a number of possible dispositions after a finding of neglect. Thus, even after a finding of neglect, the child may remain with his or her parents under proper supervision.

The threatened loss is not permanent. An adjudication of neglect may result in custody being awarded to DCYS for eighteen months.[10] General Statutes § 46b-129 (d). Like the order for temporary custody prior to an adjudication of neglect, an adjudication of neglect that results in custody by DCYS is neither final nor irrevocable. The decision is necessarily reviewed in the trial court if DCYS seeks to extend the commitment beyond the eighteen month period. General Statutes § 46b-129 (e). "It is also reviewable upon a petition for revocation of custody filed, inter alia, by the parent or by DCYS under § 46b-129 (g); and, therefore, the deprivation of the parent's right to care and custody of his or her children is much less serious in a temporary custody hearing than in the *Santosky* termination of parental rights proceeding." (Footnote omitted.) *In re Juvenile Appeal (83–CD),* supra, 299–300.

Because a neglect proceeding does not in and of itself lead to permanent termination of parental rights, the considerations that led the United States Supreme Court in *Santosky* to impose a higher standard of proof are not present here. "Where two important interests affected by a proceeding are in relative equipoise, as they are in this situation, a higher standard of proof would necessarily indicate a preference for protection of one interest over the other. See *In Re Winship,* 397 U.S. 358, 371, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (Harlan, J., concurring)." *In re Juvenile Appeal (83–CD),* supra, 298. Thus, the fair preponderance of the evidence standard of proof is the proper standard in neglect proceedings because any deprivation of rights is reviewable and nonpermanent and therefore "the private interests involved are relatively balanced between

---

[10] It is possible for custody in DCYS to extend past eighteen months. General Statutes § 46b-129 (e) provides that, upon petition to the court, DCYS may "extend the commitment beyond such eighteen-month period on the ground that an extension is in the best interest of the child."

the safety of the child and the combined family integrity interests of parent and child." *In re Juvenile Appeal (83–CD),* supra, 300.

The trial court properly could have used a fair preponderance of the evidence standard in finding neglect.[11]

## B

### THE TERMINATION OF PARENTAL RIGHTS PETITION

The filing of a petition to terminate parental rights is one of a number of possible dispositions after a finding of neglect.[12] But while termination of parental rights by petition may be the disposition following a finding of neglect, an order terminating parental rights

---

[11] See footnote 3, supra. Whether the trial court was clarifying its decision of February 16, 1982, when it found clear and convincing evidence of neglect in its April 2, 1982 judgment or whether the trial court reexamined its finding of neglect due to its belief that *Santosky* applied to a neglect petition is irrelevant. The trial court at the very least applied a fair preponderance of the evidence standard and that is all that is required for a finding of neglect.

[12] An adjudication of a neglect petition is not a prerequisite for termination proceedings. General Statutes § 45-61c (a) provides that: "Any of the following persons may petition the court of probate to terminate parental rights of all persons who may have parental rights regarding any minor child and may, if adoption is contemplated, petition the court for the appointment of a statutory parent or for the termination of parental rights of only one parent provided the application so states: (1) Either or both parents, including a parent who is a minor; (2) the guardian of the child; (3) the selectmen of any town having charge of any foundling child; (4) a duly authorized officer of any child care agency or child-placing agency or organization or any children's home or similar institution approved by the commissioner of children and youth services; (5) a blood relative of the child, descended from a common ancestor not more than three generations removed from the child, if the parent or parents have abandoned or deserted the child; (6) the commissioner of children and youth services, provided the custodial parent of such minor child has consented to the termination of parental rights and the child has not been committed to the commissioner, and no application for commitment has been made; provided in any case hereunder where the minor child with respect to whom the petition is brought has attained the age of fourteen, the minor child shall join in the petition."

General Statutes § 45-61f (d) provides that the court may terminate parental rights upon clear and convincing evidence of any of the following:

after a termination petition proceeding requires its own specific findings. While a finding of neglect, resulting in non-permanent custody, may be proved by a fair preponderance of the evidence, all of the elements of the termination of parental rights petition must be proved by clear and convincing evidence. *Santosky,* supra; *In re Juvenile Appeal (83–CD),* supra. An adjudication of neglect is not a basis per se for termination of parental rights. In deciding to terminate parental rights by petition brought pursuant to General Statutes § 45-61f (d) (2), the court must first find "that the child has been denied, by reason of acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being . . . ." We emphasize that this finding is independent of a finding of neglect on a neglect petition. While much of the evidence on which a finding of neglect on a neglect petition has been based may also be some evidence concerning the denial of

"(1) Over an extended period of time but not less than one year the child has been abandoned by the parent, provided the court may waive the requirement that one year expire before the termination of parental rights if it finds that from the totality of the circumstances surrounding the child, such waiver is necessary to promote the best interests of the child; or (2) that the child has been denied, by reason of acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being whether such denial is the result of the physical or mental incapability of the parent or conditions attributable to parental habits, misconduct or neglect, and these parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not, in the best interests of the child, be permitted to exercise, parental rights and duties, or (3) where there are no identifiable acts of parental commission or omission as set forth in subdivision (2), but it nevertheless appears to the court that (A) there is no ongoing parent child relationship which is defined as the relationship that develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child and (B) to allow further time for the establishment or reestablishment of the parent child relationship would be detrimental to the best interests of the child; or (4) that both parents, or the sole parent, of the child consent to termination of their parental rights with respect to such child."

necessary care, guidance or control in a termination of parental rights petition, the trial court must examine such evidence ab initio and in a new light.[13] Does the evidence clearly and convincingly prove "that the child has been denied, by reason of acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being . . . [?]" Id. If the court answers this affirmatively, the court then goes on to determine whether there is clear and convincing evidence that "these parental acts or deficiencies support the conclusion that the parent cannot exercise, or should not, in the best interests of the child be permitted to exercise, parental rights and duties." Id. Thus, when the court considers termination of parental rights, each element of the statute must be proved by clear and convincing evidence.

## C

### STANDARD OF PROOF IN THE INSTANT CASE

In the instant case the trial court was well aware of its duty to separate the neglect petition from the termination petition. It painstakingly delineated the evidence that could be considered in the adjudicatory phase of the neglect petition.[14] The court adjudicated

---

[13] In a situation such as the instant case, where the same evidence is relevant to two different proceedings and the proceedings are governed by different standards of proof, it is not necessary that the evidence be presented twice to the same trial judge. In considering the termination of parental rights petition, although the trial court may not rely on the *finding* of neglect, the trial court may rely on the *evidence* that warranted a finding of neglect. In dealing with the neglect petition, however, the court views the evidence from a fair preponderance of the evidence standard whereas when dealing with the termination of parental rights petition the court views the same evidence, together with any other evidence presented, from a clear and convincing evidence standard.

[14] When the parents' counsel questioned a witness the court interrupted to clarify:

"THE COURT: Excuse me. Just for the ground rules. The adjudicatory

T a neglected child "by far more than the required fair preponderance of evidence."[15] In this case, the dispositive phase of the neglect petition was the hearing on the termination of parental rights petition. After that hearing the trial court first found: "The *injuries* that required finding T to have been neglected by reason of repeated, serious, deliberately inflicted physical abuse *constitute clear and convincing evidence* that he was denied the physical care necessary for his well-being." (Emphasis added.) It then concluded: "The totality of this evidence—the extent of the injuries; the parents' persistent denial of responsibility; the unlikelihood of change through therapy in the face of this denial; the necessity for securing a safe and appropriate nurturing permanent home without further delay— constitutes clear and convincing proof of the second finding required for the pleaded ground for termination of parental rights: That '. . . these parental acts and deficiencies support the conclusion that the parent cannot exercise, or should not, in the best interests of the child, be permitted to exercise, parental rights and duties.' " Thus, each element of the termination of parental rights petition under General Statutes § 45-61f (d) (2) was found by clear and convincing evidence.

Because the trial court found T to be neglected by "far more than the required fair preponderance of the evidence,"[16] and because it found termination of parental rights necessary by clear and convincing evidence, the trial court did not err in applying the standard of proof that it did to each petition.

---

phase which we're now in, freezes the situation as it was on May 20 or before. Anything that happened subsequent to May 20th would have to be disposition."

[15] See footnotes 3 and 11, supra.

[16] See footnotes 3 and 11, supra.

## IV

### THE STANDARD OF PROOF REGARDING TERMINATION OF PARENTAL RIGHTS AFTER *SANTOSKY*

The parents argue that because *Santosky* was decided in the middle of the proceedings the standard of proof required for parental termination had not been calibrated in advance and was unfairly changed. "Since the litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance. Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard." (Footnote omitted.) *Santosky,* supra, 757.

All the evidence concerning both the neglect petition and the termination petition was heard before *Santosky* was decided and while the Practice Book required proof by a fair preponderance of the evidence for both neglect and termination proceedings. The trial court did not rule on the termination petition, however, until after the *Santosky* decision. It was aware that *Santosky* required clear and convincing evidence for termination of parental rights and used that standard. See *In re Juvenile Appeal (83-BC),* 189 Conn. 66, 72 n.4, 454 A.2d 1262 (1983). Had the trial court not been able to apply the clear and convincing standard to the evidence heard it could have called for further proceedings in light of *Santosky*.[17]

---

[17] Following the issuance of *Santosky* v. *Kramer,* 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), we remanded a number of termination of parental rights cases where it was not evident that the trial court applied the required "clear and convincing evidence" standard of proof. *In re Juvenile Appeal (83-AB),* 189 Conn. 58, 454 A.2d 271 (1983).

Although the trial court was able to apply the proper standard of proof, both the petitioners and the parents were unaware at the time the hearing commenced that the standard of proof concerning the termination of parental rights petition required clear and convincing evidence. But the parents made no postjudgment motions to the trial court for further hearings in light of *Santosky*. Furthermore, they point to no prejudice from their lack of knowledge. For example, there has been no claim that the parents would have presented their case differently had they known that the petition to terminate parental rights would be determined by clear and convincing evidence. Other jurisdictions that have dealt with termination matters pending at the time *Santosky* was decided have not found new hearings to be required as of right. See *Petitions of Department of Social Services to Dispense with Consent to Adoption,* 15 Mass. App. Ct. 975, 446 N.E.2d 746 (1983); *Custody of a Minor* (No. 1), 13 Mass. App. Ct. 1088, 436 N.E.2d 172 (1982); *In Re Involuntary Termination, Etc.,* 315 Pa. Super. 144, 461 A.2d 838 (1983).

In the instant case, the parents have alleged nothing more than that the standard of proof was not calibrated in advance. Under the circumstances of this case we can find no reversible error in the trial court's use of the clear and convincing standard of proof after it had heard the evidence.

There is no error.

In this opinion the other judges concurred.