[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is the case of Jeremy Nason who will be 2 years old on November 5th of this year. Jeremy is the subject of a petition to terminate the parental rights of his mother, Sheri Nason. That petition was filed on June 6, 1990 and was last amended on October 2, 1990, the day of trial. CT Page 3614
Mother's whereabouts are unknown and she was not present at the trial but was represented by counsel. She was last reported to have moved from the Rockville-Manchester area of Connecticut to the Portland, Maine area in July, 1990, Efforts by her attorney to contact her through her family in Maine have been unsuccessful. The court had a notice of the termination proceedings published in a local Connecticut newspaper and a Portland, Maine newspaper. The court finds that every reasonable effort has been made to notify mother of the termination proceedings. There is no legal or acknowledge father in this case.
ADJUDICATION — as of the date the petition was last amended: 10-2-90.
From the evidence produced during the course of the trial, interpreted in light of the prior proceedings involving Jeremy which are contained within the court file, and of which the court takes judicial notice, the Court finds that the petitioner has proven by clear and convincing evidence, three of the four grounds alleged for terminating the parental rights of Sheri Nason.
ACTS OF OMISSION OR COMMISSION:
The court finds that the state has not proven this ground by clear and convincing evidence. No evidence was presented that the child was denied any necessary care, guidance or control as the result of acts of commission or omission by the mother subsequent to the child's commitment on January 5, 1990. Certainly the care Jeremy received from his foster parents was adequate.
While Jeremy may well have been denied the attention and care of his natural mother, that alone is not proof that he was deprived of any necessary care. (Emphasis added). It is of no consequence to a child of Jeremy's age who provides him with physical care and emotional support, just so long as these needs are met. Without proof of deprivation of care, this ground cannot be found. In Re Juvenile Appeal, 192 Conn. 254, 267
(1984). Consequently, this ground is dismissed.
ABANDONMENT:
The Connecticut General Statutes sections 17-43a(b)(1) defines abandonment as the parents' failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."
 "Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child and no concern for the child's welfare, statutory abandonment has occurred." In Re Rayna N., 13 Conn. App. 23, 36 (1987).
It has been clearly and convincing been proven that since she left the Lourdes program on March 7, 1990, Sheri has failed to maintain a reasonable CT Page 3615 degree of interest, concern or responsibility in the welfare of her son. Since that time she has had no involvement in his care nor expressed any interest or concern as to his health or welfare of well being, despite the fact that this is a child with special needs. Additionally, she visited with him on only four occasions during the last seven months and has not seen him nor had any contact whatsoever with his caregivers in the past three months. On the two occasions when mother called the child's foster mother since March 7, 1990 she called only to discuss herself and her own problems. She did not ask about Jeremy even once during those two telephone conversations. Mother's whereabouts is and has been unknown since July, 1990.
"General Statutes (Sect.) 17-43a(b)(1) does not contemplate a sporadic showing of `interest, concern or responsibility for the welfare of a child.' A parent must maintain a reasonable degree of interest in the welfare of his or her child." In re Rayna M., Supra at 33-38. "Maintain implies a continuing, reasonable degree of concern." In re Migdalia M.,6 Conn. App. 194, 210 (1986).
The Court finds that the petitioner has proven by clear and convincing evidence that mother has abandoned Jeremy, as that term is defined by statute.
NO ONGOING PARENT-CHILD RELATIONSHIP:
Section 17-43a of the Connecticut General Statutes defines this ground as the absence of an:
 ". . .ongoing parent-child relationship which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."
The court finds from the evidence clear and convincing proof that there is no parent-child relationship in existence between Sheri and Jeremy.
Mother has been only minimally involved in Jeremy's life since March, 1990. With the exception of the two months when mother and child lived in the Lourdes program Sheri has not cared for her child, nor contributed to the development of the child's physical, educational or moral upbringing since Jeremy was placed in foster care in August, 1989.
During the visits between mother and child subsequent to March, 1990, no parent-child relationship was observed between them. The child did not respond to Sheri as a child would normally respond to his mother nor did he indicate by his behavior that he recognized her as his mother. He did not seek her out at the beginning of the visits nor did he appear upset when she left him. In contrast, when his foster mother left him for his visits CT Page 3616 with Sheri, Jeremy held his hands out to his foster mother and cried. It would certainly appear that he has bonded with the foster mother and not his natural mother.
Sheri has effectively abandoned Jeremy for the past three months. She has left no means of being able to contact her should Jeremy become ill or suffer an accident. That is not the act of a loving and caring parent.
The fact that there has been some contact between parent and child children subsequent to the commitment . . . "does not preclude a determination that there has been no ongoing parent-child relationship . . .".
In re Juvenile Appeal, (Anonymous), 181 Conn. 638, 646 (1980).
Even though no parent-child relationship exists, that alone is not grounds to terminate a parent's rights. The court must also find by clear and convincing proof that to permit further time to establish such relationship would be detrimental to the best interest of the child.
As of the date of trial, mother has abandoned her child both in the statutory sense and, for at least the past three months, in the common law sense. She has left the State of Connecticut and apparently is living in Maine. Jeremy is a special needs child who requires constant and consistent attention and care in a secure and nurturing home. Sheri does not understand nor appreciate the special needs of this child, nor is she likely to be able to do so in the foreseeable future. It is unlikely that she will ever be able to fulfill her role as Jeremy's primary caregiver.
Every child needs a secure and permanent home, but this is even more important for children with special needs such as Jeremy. He cannot wait to determine whether mother will decide to return to his life and should that happen waif for an indeterminate if not indefinite time to see whether she will be able or willing to establish a meaningful relationship with him.
The Court finds clear and convincing proof that any further delay in establishing permanency will be detrimental to this special child.
FAILURE TO REHABILITATE
Section 17-43a(b)(2) of the General Statutes provides for the termination of parental rights in the situation where a parent of a child who has previously been adjudicated as being neglected fails to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time said parent could assume a responsible position in the life of the child, considering that age an the needs of said child.
On August 29 and 30, and September 13, 1989, following the filing of a neglect and uncared-for petition, mother and child were evaluated by CT Page 3617 the Community Child Guidance Clinic pursuant to a court order. Jeremy was diagnosed as suffering from multiple physical and developmental deficiencies. Specifically he was born microcephalic, with a club foot and developmental delays in all areas, including the personal and social areas.
Dr. Lawrence Sereda determined at that time that mother has limited ability to care for an infant, especially a handicapped one. Dr. Saro Palmeri found the child to be physically, connotatively, and emotionally vulnerable and in jeopardy. The recommendation of the evaluation team was not to return Jeremy to the care of his natural mother. It was felt that she is unable, due to her own limitations, to car for Jeremy by herself and that even with widespread community support and help she would be blatantly inadequate and would most likely place him at risk for neglect and further developmental and psychological damages.
Despite that assessment, both DCYS and the Court continued to work with mother in the hope of reuniting mother and child. Consequently, when Jeremy was adjudicated neglected and uncared-for on January 5, 1990 and committed too the custody of DCYS on that same date, mother was enrolled in the Lourdes residential program for the purpose of helping her to develop skills which would permit her to live independently as well as the parenting skills that she needed to be able to care for her child. Jeremy was removed from his foster home and placed with mother in this controlled, supervised residential setting.
Subsequent to her admission to the Lourdes program it was discovered that mother was pregnant. Since the Lourdes policy was not to allow pregnant woman to remain in their program DCYS was notified and was requested to establish another residential program for Sheri. The Lourdes staff concluded that they would keep Sheri with them until a new program could be developed.
On March 7, 1990, while DCYS was in the process of developing a new program, mother took Jeremy and left the Lourdes program to be with her boyfriend. She indicated to the staff upon leaving that she felt the program to be boring. Jeremy was returned to foster care by DCYS the next day.
Bonnie Walsh, who was Sheri's social worker and counselor at Lourdes, testified that the program established for Sheri at Lourdes was tailored to her special needs. It was a one on one effort to teach her some of the parenting skills she would need to be able to care for her son. Ms. Walsh reported that mother made no progress or gain at all in developing parenting skills. She was unable to understand what she needed to do in order to have Jeremy returned to her; she does not recognize Jeremy's needs. Ms. Walsh testified that in her opinion mother does not have the ability to care for Jeremy and that she will not utilize community support services because she is afraid of the system which provides those services. CT Page 3618
Ms. Walsh indicated that Sheri appears to love Jeremy and probably would no do anything deliberate to harm him. However, mother sees Jeremy as being a normal child without special physical or developmental problems and deficiencies.
The Court finds that mother is no closer today to being able to care for this child than she was when he was committed under order of temporary custody in August, 1989 or when he was adjudicated and committed in January, 1990. The Court also finds that because of her borderline intelligence and prior personal history it is most unlikely that she will ever be able to develop the skills needed to care for this child's special needs with or without extensive support services. See: In re Juvenile Appeal (84-3), 1 Conn. App. 463, 478 (1984).[1]
WAIVER OF THE ONE-YEAR REQUIREMENT
The statutory requirement that the grounds for terminating the rights of parents are based must have existed for one year may be waived of the court finds" . . . from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."
Jeremy has effectively been in foster care for over one year and should not be required to wait any longer to be provided with a permanent, loving, caring and nurturing home. He is currently in such a home with a foster mother who expressed a desire to adopt him.
Mother has not gained any insight into the needs of this child, nor developed any parenting skills needed to care for him since the date of commitment. The court finds that even if she had not abandoned the child, based upon her limitations it can reasonably be predicted that she will not be capable of caring for Jeremy in the foreseeable future, if ever.
Therefore, to require Jeremy to wait an additional period of time would be futile and to the detriment of the child.
Based upon the foregoing, together with the court's previous findings in this case, the court finds that it is in the best interest of the child to waive the one year requirement and therefore the waiver is granted.
Before determining whether to terminate parental rights the court is required to make six statutory findings pursuant to section 17-43a(d):
(1) A multitude of services have been offered to mother through DCYS in an effort the reunite her with her son. Included among the organizations providing services to her are: The Visiting Nurse Association, The Department of Mental Retardation Early Intervention Program, Parent Aid Services, The Women and Infants Program, The U-Conn. Medical Center Social Services, The Lourdes Program, as well as individual efforts by the DCYS social worker. CT Page 3619
(2) The only court orders entered in this case since commitment were the court expectations of January 5, 1990 which mother did not completely meet.
(3) Jeremy has no ties with his mother. He does not recognize her as such and has bonded with his foster mother. Sheri has not visited with the child on a regular basis since leaving the Lourdes Program and has not seen him at all for the three months preceding the trial.
(4) Jeremy is almost two years old with a date of birth of 11-5-88. He is very adoptable at this point in his life even with his special needs. However, his adoptability becomes less certain as time passes.
(5) Mother has not adjusted or changed her conditions or circumstances too make it in the best interest of the child to be reunited with her in the foreseeable future. She has not taken advantage of the numerous services specifically set up for her by the various agencies which have been trying to assist her. She has abandoned Jeremy.
(6) No one has prevented mother from establishing or maintaining a relationship with her son. Her economic circumstances were never a factor in this situation.
DISPOSITION — as of the date of trial: 10-2-90.
The court has found that the petitioner has proven, by clear and convincing evidence, three grounds for terminating the parental rights of Sheri Nason. The court also finds that the petitioner has proven by clear and convincing evidence, as previously outlined in this opinion, that it is in the best interest of Jeremy to terminate the parental rights of his mother so that he may be placed adoption in a permanent, secure and nurturing home where his special needs will be met.
JUDGMENT
Having considered the foregoing, it is found by clear and convincing evidence to be in the best interests of Jeremy Nason for his mother's parental rights to be terminated.
It is therefore ORDERED that the parental rights of Sheri Nason are hereby terminated. It is further ORDERED that the Commissioner of DCYS be appointed statutory parent for the purpose of placing said child forthwith in adoption, and to secure that end, the said Commissioner is further ORDERED to submit to the court in writing no later that 90 days from the date of this judgement a report as to the progress toward such adoption and thereafter to report at such times and in such form as the court may from time to time require.
Terence A. Sullivan, Judge CT Page 3620