[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a petition filed by the Department of Children and Families (hereinafter the "Department") which seeks to terminate the parental rights of Kelly P. to her son, Dalton A., whose date of birth is November 1999. The petition was filed on November 7, 2000. A petition had been filed by the Department on July 28, 2000, which alleges that the child was neglected and uncared for. On December 1, 2000 the neglect petition and termination petition were consolidated into one co-terminous action. The father, Scott A., consented to termination of his parental rights on December 1, 2000.
A default trial was held on January 4, 2001. The Court finds that the mother was duly served, and was represented by court appointed counsel. The mother did not appear at the trial, although her counsel was present. Nor has the mother ever appeared at any hearings since the filing of the termination petition. The court has jurisdiction over this matter; there is no pending action affecting custody of this child in any other court; and reasonable efforts have been made to locate the mother and reunify her with her son.
The grounds alleged on the petition filed on July 28, 2000 are that Dalton was being neglected in that he was being denied proper care and attention, physically, educationally, emotionally or morally, and he was being permitted to live under conditions, circumstances or associations injurious to his well being; and that he was uncared for in that his home could not provide the specialized care which his physical, emotional or mental condition required.
The Department seeks termination on the grounds that the child has been abandoned by the mother, in the sense that she failed to maintain a CT Page 1338 reasonable degree of interest, concern, or responsibility as to the welfare of the child, and that there is no ongoing parent-child relationship with respect to the mother that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical emotional, moral, or educational needs of the child and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child.
This Court, having reviewed the verified petitions, summaries of facts and social study, and having heard the testimony of Kimberly Mahon, Department social worker, makes the following factual findings and reasonable inferences supported by those findings:
FINDINGS OF FACT
The evidence revealed that Dalton went into the care of the Department on July 26, 2000 under a 96 hour hold due to mother having left the child with an inappropriate caretaker. On July 28, 2000, a neglect petition along with an application for Order of Temporary Custody was filed. The Order of Temporary Custody was granted on July 28, 2000, and sustained on August 2, 2000.
The mother, Kelly P., has permitted inappropriate caretakers to provide care for her son Dalton. On or about July 14, 2000, Ms. P. left her child in the care of Mr. Tom C. stating that she would return on July 17, 2000. Ms. P. did not return until July 23, 2000. During the period of time that Dalton was with Mr. C., Mr. C. did not have a phone number or address by which to contact Ms. P. Mother left her son with Mr. C. despite her knowledge that Mr. C. uses illegal substances.
The father, Scott A. was arrested for sexual assault 2nd and risk of injury to minor on June 2, 2000. In addition, there were allegations that he had molested his ex-wife's 14 year old sister. Mr. A. also used illegal substances and had been arrested for possession of marijuana. Despite mother's knowledge of this information, she permitted Mr. A. access to Dalton, placing him at risk of being sexually molested.
Ms. P. permitted her child to be cared for by Ms. Roberta B. Ms. B. has had prior involvement with the Department regarding issues of emotional neglect and was involved in a romantic relationship with an individual accused of sexually molesting minor children.
Ms. P. has unresolved mental health issues, which impact her ability to appropriately care for her child. On or about July 24, 2000, Ms. P. was admitted to Johnson Memorial Hospital regarding her mental health CT Page 1339 issues. She was released with discharge instructions to participate in individual counseling. Ms. P. did not follow through with the discharge recommendations.
Dalton has visited with his mother once since his removal from her care, despite the Department's willingness to provide weekly visitation for her. The Department social worker has only spoken to Ms. P. one time since the child was placed. An appointment was arranged with Ms. P. for a face-to-face contact with the Department social worker on October 26, 2000. Ms. P. called to cancel that appointment and has failed to reschedule any further appointments. Mother's whereabouts are currently unknown.
Ms. P. was referred to New Directions for a substance abuse evaluation and to North Central Counseling for individual counseling. She was also offered transportation, domestic violence counseling, parenting classes and case management services. Ms. P. failed to follow through with any referrals or to engage in any services in order to work towards reunification with her son.
ADJUDICATION — NEGLECT PETITION
In order for this Court to adjudicate the child as neglected or uncared for, this court must be convinced by a fair preponderance of the evidence that the child has been neglected or uncared for as of the date the petition was filed or last amended. In re Juvenile Appeal (84-AB),192 Conn. 254, 263, 471 A.2d 1380 (1984); Conn. Practice Book Sec. 1043, as amended.
The evidence in this case establishes by a fair preponderance of the evidence that as of July 28, 2000, Dalton was neglected in that he was permitted to live under conditions, circumstances or associations injurious to his well being; was denied proper care and attention and was uncared for. During the 8 (eight) months that Dalton was with his mother, she left him in the care of at least 5 (five) different caretakers. As a result, he was denied a regular routine and schedule, which is important for the healthy development of an infant. Ms. P. left Dalton in the care of inappropriate caretakers, with knowledge of the issues which made them inappropriate. Dalton had specialized needs in that he is was an infant and relied solely on a competent and sober caretaker for every facet and element of his existence. Ms. P.'s transient lifestyle, mental health issues and possible substance abuse issues interfered with her ability to provide for her son's needs.
ADJUDICATION — TERMINATION
CT Page 1340
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of November 7, 2000, this child has been abandoned by his mother, in that she has not maintained a reasonable degree of interest, concern or responsibility, for him. "A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing reasonable degree of concern." In re Michael M.,29 Conn. App. 112, 614 A.2d 832 (1992) quoting In re Rayna M.,3 Conn. App. 23, 37-38, 534 A.2d 897 (1987). Mother has not maintained contact with the Department or kept her whereabouts known to them. . Mother has not sent any cards, letters or gifts to be delivered to Dalton. Mother has had one visit with her son since he went into placement. She has not supported the child, physically, emotionally or financially. She has not attended any of the Administrative Case Reviews held by the Department regarding the treatment plans for the child. .
The Court finds by clear and convincing evidence, that as of November 7, 2000, there was no ongoing parent-child relationship between Dalton and his mother. Since Dalton was placed with the Department on July 26, 2000, mother has seen her son one time. During that one visit between Ms. P. and her child, the child appeared to have minimal connection or bond with his mother. The child did not play with the mother or seek comfort or affection from her and did not seem to recognize Kelly as his mother. Kelly evidence little interest in the child, showed no warmth or affection for Dalton and no capacity to develop a parental relationship with him. Mother has also stated to the social worker that she thought it was in Dalton's best interest to be adopted, further demonstrating that she has no ongoing parent-child bond or relationship with Dalton.
REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by C.G.S. Sec. 17a-112(e):
(1) Appropriate and timely services were provided by the Department to mother, including parenting classes, a substance abuse evaluation, visitation, individual counseling and domestic violence counseling. These were appropriate services under the circumstances of this case.
(2) The court finds by clear and convincing evidence that the Department made reasonable efforts to reunify this child with his mother. Mother failed to follow through with the virtually all efforts.
(3) Reasonable and realistic goals were set by the Department. It is certainly a reasonable goal to be set for a parent of an 8 (eight) month old infant, that said parent visit their child and engage in CT Page 1341 interventions which will enable that parent to safely and effectively parent the child. Mother followed through with none of the goals set for her and in fact stated to the social worker that she felt is best for Dalton that he be adopted.
(4) Regarding the child's emotional ties to his mother, Dalton does not have a connection or bond with his mother. He does not recognize her as his parent in that he would not seek comfort from or go to his mother to have his needs met.
(5) Dalton is how 14 (fourteen) months old.
(6) Regarding efforts of the mother to adjust her circumstances, conduct or conditions to make it is the best interests of the child to return to her home in the foreseeable future and (A) the extent to which the mother has maintained contact with the child as part of an effort to reunite the child with the mother, and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. Since Dalton's placement mother has not followed through with any of the services offered her to assist her in reuniting with her child. She has contacted the Department only once; and her whereabouts are currently unknown.
(7) No inappropriate conduct is noted on the part of anyone which would have prevented the mother from having a meaningful relationship with Dalton. The Department took reasonable steps to encourage the mother to have such a relationship with her son, There was no evidence that economic circumstances prevented mother from having a meaningful relationship with their child.
DISPOSITION
Dalton has been out of his mother's care since July 26, 2000, nearly half of his life. He received very little nurturing from his mother, and was shuffled from one caretaker to another while in her care. He requires stability which his mother is unable now, or within a reasonable period of time, to provide for him.
It is, therefore, in his best interest that a termination of parental rights enter with respect to the mother Kelly P., and accordingly, a termination of her parental rights is ordered. The father Scott A., having knowingly and willingly consented to the termination of his parental rights on December 1, 2000, this Court hereby orders that his parental rights are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan for this child shall be submitted within thirty (30) CT Page 1342 days. A review plan shall be filed in accordance with state and federal law.
Patricia Lilly Harleston, Judge