### IN RE KAURICE B.*
### (AC 24229)

Foti, McLachlan and Freedman, Js.

Argued January 12—officially released June 29, 2004

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Gary J. Wilson,* for the appellant (respondent step-mother).

*John B. Ashmeade,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Barry A. Charles,* for the minor child.

*Opinion*

FREEDMAN, J. This is an appeal by the respondent stepmother from an order of the trial court sustaining an order of temporary custody regarding her minor stepdaughter, K.[1] On appeal, the respondent claims that

---

[1] The child's father is not a party to this appeal. We refer in this opinion to the respondent stepmother as the respondent. At oral argument on January 12, 2004, we inquired whether the respondent has standing to contest the order of temporary custody and ordered the parties to file supplemental briefs addressing that issue. On the basis of our review of the supplemental briefs and the court file, we are persuaded that under the circumstances of this case, the respondent has standing to appeal from the order of temporary custody.

The record reveals that there have been two orders of temporary custody involving K. The first order entered in April, 1999. On August 26, 1999, K was adjudicated neglected and committed to the custody of the petitioner, the commissioner of children and families. That commitment was revoked on December 17, 2001, and protective supervision was ordered until May 17, 2002. The order dated December 17, 2001, revoking the August 26, 1999 order of commitment, specifically provides that K's custody and guardianship reverted to her father and the respondent. Thus, the respondent may

the judgment of the trial court is against the weight of the evidence. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts. On April 21, 2003, the petitioner, the commissioner of children and families (commissioner), invoked a ninety-six hour hold as to the child pursuant to General Statutes § 17a-101g (c)[2] after receiving a report of physical abuse. On April 25, 2003, the commissioner filed a petition for an adjudication of neglect and a motion for an order of temporary custody pursuant to General Statutes § 46b-129 (b).[3] On

challenge the present order of temporary custody, which was sustained on May 2, 2003.

[2] General Statutes § 17a-101g (c) provides: "If the Commissioner of Children and Families, or his designee, has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from his surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety, the commissioner, or his designee, shall authorize any employee of the department or any law enforcement officer to remove the child and any other child similarly situated from such surroundings without the consent of the child's parent or guardian. The commissioner shall record in writing the reasons for such removal and include such record with the report of the investigation conducted under subsection (b) of this section."

General Statutes § 17a-101g (d) provides in relevant part that the "removal of a child pursuant to subsection (c) of this section shall not exceed ninety-six hours. . . ."

[3] General Statutes § 46b-129 (b) provides in relevant part: "If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or subsequent thereto, that there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) that as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety, the court shall either (A) issue an order to the parents or other person having responsibility for the care of the child or youth to appear at such time as the court may designate to determine whether the court should vest in some suitable agency or person the child's or youth's temporary care and custody pending disposition of the petition, or (B) issue an order ex parte vesting in some suitable agency or person the child's or youth's temporary care and custody. A preliminary hearing on any ex parte custody order or order to appear issued by the court shall be held within ten days from the issuance of such order. . . ."

that date, the court granted the order of temporary custody to the commissioner. A preliminary hearing was held on May 1, 2003. At that time, the respondent requested an evidentiary hearing, which was held on May 2, 2003. Several witnesses testified at that hearing, including the child's teacher and school social worker, as well as social workers from the department of children and families (department). The court also admitted into evidence the affidavits of the department social workers involved in the case. At the conclusion of the evidentiary hearing, the court sustained the order of temporary custody. The respondent has appealed from that decision, arguing that no evidence was presented at the hearing that the child was suffering from physical illness or serious physical injury or that she would be in immediate physical danger if she returned home.[4]

We initially set forth our standard of review. Pursuant to § 46b-129 (b), the court may "issue an order ex parte vesting in some suitable agency or person the child's or youth's temporary care and custody" if it appears, on the basis of the petition and supporting affidavits, that "there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) that as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety. . . ."

At a subsequent hearing on an order of temporary custody, "the proper standard of proof . . . is the normal civil standard of a fair preponderance of the evidence. . . . The party seeking a change in custody, in this case the [petitioner], must prove by a fair prepon-

---

[4] At oral argument before this court, the parties represented that K is still in the custody of the department pursuant to the order of temporary custody.

derance of the evidence that custody should be taken from the parent and vested in the commissioner on a temporary basis under the criteria established in § 46b-129 (b)." (Citation omitted.) *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 296, 455 A.2d 1313 (1983).[5]

We note that "[a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Michael L.*, 56 Conn. App. 688, 692–93, 745 A.2d 847 (2000). With those principles in mind, we will review the evidence presented at the hearing on the order of temporary custody to determine whether the court's determination is supported by the evidence in the record.

On the basis of the evidence presented at the hearing, the court reasonably could have found the following facts. On April 21, 2003, the department received a report from the director of the Bridgeport Learning Center, regarding alleged abuse by the respondent toward K and K's sister. According to the report, the sister stated that she and K had been hit with a belt by the respondent, and that K had been hit more times than the sister. In response to that report, on April 21, 2003, Cynthia Pfeifer, an investigator for the department, interviewed K at her school with the school social

[5] The court properly applied that standard of review in sustaining the order of temporary custody.

worker, Kathy Russell. During that interview, the child admitted that the respondent had hit her with a belt one time, but stated that her father had not hit her in the past two years. She also stated that she did not receive any marks or bruises as a result of being hit. Department workers did not observe any marks on K as a result of her having been hit.[6] During the interview, K's father arrived. He interrupted the interview several times and when told to wait until the interview was over, spoke to K through the door. In response to that, K withdrew and stated that she did not want to go home.

At some point, Pfeifer left the room to call her supervisor. During the time that Pfeifer was out of the room, K told Russell that she was scared and that her father was mad. K told Russell, "He slapped me so hard one time after I got a forty-two on my test, I couldn't come to school for four days." While on the telephone with her program supervisor, Pfeifer was informed that K's sister, who was being interviewed concurrently by another social worker, had been persistent in her assertions that she and K had been hit more than one time.

When Pfeifer returned and informed K that the sister had been saying different things during her interview, K admitted that she had been hit more than once. K also reported to Pfeifer that on one occasion, New Year's Eve, her father was intoxicated and showed her and her sister how to hold and use a gun. K indicated that at some point, her father and the respondent were outside and that her father fired the gun. Although K initially had stated that her father came home intoxicated one or two times, she later stated that this happened many times. She further indicated that her father had driven her and her sister while he was intoxicated

---

[6] The department workers checked K for bruises after she was brought to the department. They did not check her for bruises while at the school because at that time, she reported that she did not sustain any marks.

and that she knew he was intoxicated because he drove through red traffic signals.

Pfeifer testified that once K learned that she would not be going back home after the interview, she spoke more openly. According to Pfeifer, K inquired about her safety and expressed concern about her father coming to school the following day when she was going on a field trip to an aquarium. She was inquisitive about how the department or the school was going to prevent her father from seeing her. K also told Pfeifer that three or four weeks earlier, after K received a poor grade on a test, her father slapped her in the face, which caused a bruise and swelling, and caused her nose to bleed. K told Pfeifer that if anyone asked about the bruise, she was told to say that she was hit by a pole or had walked into a pole.[7] She also said that she was afraid to tell Pfeifer about this while they were at the school because she was afraid of her father's response.

Finally, the court heard the testimony of Juanita Soriano-Taylor, a social worker with the department, regarding allegations that K had been involved in a sexual relationship with a minor male relative. According to Soriano-Taylor, in August, 2002, K's sister had gone home on an overnight visit and observed a sexual relationship between K and that relative. The sister reported her observation to Soriano-Taylor, and the department investigated the matter. At that time, K denied the allegation, and the department did not pursue the matter further. On April 23, 2003, K admitted that the relationship was ongoing and that her parents were aware of the relationship.

On the basis of the evidence admitted at the hearing, the court concluded that K would be subject to immedi-

---

[7] K's teacher, Lynn O'Brien, testified that K was absent from school on March 18, 19, 20 and 21, 2003, and that when she returned to school, she had a bruise under her eye that looked like it was healing. K told O'Brien that she had the bruise because she had fallen off her bicycle.

ate physical danger from her family surroundings if she was returned to the care and custody of her father and stepmother. Accordingly, the court sustained the order of temporary custody. On the basis of our independent review of the evidence presented at the hearing, we conclude that the court's decision sustaining the order of temporary custody was amply supported by the record and, therefore, is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.