# IN RE NASHIAH C.*
## (AC 25098)

Foti, McLachlan and Dupont, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued October 15, 2004—officially released February 1, 2005

*Denise P. Ansell*, with whom was *Adam A. Laben*, for the appellant (respondent mother).

*Clare E. Kindall*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Valerie Alexander*, for the minor child.

*Opinion*

DUPONT, J. Five different trial courts have been involved in this matter, culminating in the denial of the respondent mother's motion, dated August 25, 2003, to

dismiss an order of temporary custody of a minor child[1] and in the sustaining of the order of temporary custody dated July 8, 2003.[2] We affirm the judgment of the trial court.

The issues on appeal primarily involve whether the court lacked subject matter jurisdiction because (1) the temporary custody order had been vacated previously, without any appeal having been taken from it, and (2) the hearing on the order sought by the petitioner, the commissioner of children and families (commissioner), was not timely pursuant to General Statutes § 46b-129 (d) (4).[3] In light of the facts and the respondent's argument, we are faced with two questions. The first question is whether the court lacked jurisdiction because a prior court's vacation of the order constituted a final judgment. The second question is whether § 46b-129 (d) (4) is directory or mandatory, that is, whether jurisdiction to act on a temporary custody order is destroyed if there is no compliance with the ten day period set forth in the statute.

I

PROCEDURAL AND FACTUAL BACKGROUND

The respondent and the minor child, Nashiah C., involved in the order of temporary custody both tested

[1] We note at the outset that there are two orders of temporary custody involved in this case. The first order, which is the subject of this appeal, is an ex parte order of temporary custody dated July, 8, 2003, issued pursuant to General Statutes § 46b-129. The second order was issued by the court, *Rubinow, J.*, on July 24, 2003, pursuant to General Statutes § 46b-121. The respondent mother neither appealed from that order directly, nor raised the issue in subsequent hearings before the court, *Lopez, J.* We therefore do not discuss the propriety of Judge Rubinow's order.

[2] At trial, both parents were represented by counsel and participated in the hearings. Only the respondent mother, however, is involved in this appeal, and we therefore refer to her in this opinion as the respondent.

[3] General Statutes § 46b-129 (d) provides in relevant part: "The preliminary hearing on the order of temporary custody . . . filed pursuant to subsection (a) of this section shall be held in order for the court to . . . (4) advise the parent . . . of the right to a hearing . . . to be held within ten days

positive for marijuana at the child's birth on July 22, 2002. The commissioner filed a neglect petition and a petition for an order of temporary custody on July 29, 2002. The court, *Martin, J.*, denied the custody petition and scheduled a show cause hearing on the neglect petition for August 2, 2002. At that hearing, the court, *Driscoll, J.*, adjudicated the child neglected, but left him in his parents' custody with protective supervision until February 2, 2003. The supervision was later extended until August 2, 2003, because of the parents' lack of compliance with the court-ordered rulings. On June 24, 2003, the court, *Jongbloed, J.*, at the request of the commissioner, vacated the order for protective supervision and the matter was withdrawn. On July 8, 2003, the commissioner filed another neglect petition and petitioned the court for an order of temporary custody. Judge Jongbloed signed an ex parte order of temporary custody on the same day, and the commissioner placed the child in foster care. In accordance with § 46b-129 (d) (4), a preliminary hearing on the order was scheduled for July 18, 2003. On that date, another hearing was scheduled for July 24, 2003, at which time the court, *Rubinow, J.*, consolidated the neglect petition and the hearing on the custody order over the respondent's objection. Judge Rubinow acknowledged that the scheduled hearing involved only the custody order, action on which she stated she would defer, but stated that evidence as to the neglect petition would be heard to protect the child's interests pursuant to General Statutes § 46b-121 (b). Judge Rubinow, at the outset of the hearing, stated, "I haven't ruled on the [custody] petition. The parties are entitled to a hearing on [that] petition."

At the conclusion of the morning session at which testimony from three witnesses for the commissioner

from the date of the preliminary hearing if the hearing is pursuant to an order of temporary custody . . . ."

had been given, Judge Rubinow ruled that the temporary custody order should be vacated because it had been rendered ex parte without sufficient evidence to sustain it. She also ordered that the child remain in the commissioner's custody pending further proceedings on the neglect petition,[4] and, after accommodating the availability of the respondent's counsel, she continued the hearing to August 18 and 20, 2003. The respondent filed two motions on July 29, 2003, one to disqualify Judge Rubinow,[5] and a second to obtain a hearing for the immediate return of her child.[6] On August 6, 2003, the respondent filed a "motion for determination whether an appealable issue exists," claiming that

[4] Judge Rubinow ordered in relevant part: "Having heard the evidence that has been presented and without prejudice to any conclusions that may be drawn at such time as the evidence is completed with regard to the allegations of neglect, clearly it has not been tested, but the court finds that due to the instability and circumstances surrounding the family with regard to domestic violence . . . and also with regard to [the respondent's] obligations to the criminal court both in this state and it may well be to another state, the court will find that the child's best interest will be preserved by having him remain in the custody of the [commissioner]. He is not being committed. This is a temporary order and will be resolved upon the conclusion of the evidence with regard to the neglect petition at issue. That order having been issued, however, the court will find that there is insufficient evidence to sustain the [temporary custody order]. That order having been entered ex parte by a judge without hearing, that order is now vacated."

[5] If Judge Rubinow had granted that motion, all of the court's orders issued on July 24, 2003, would have been rendered void, thereby returning the parties to the position they were in before the July 24, 2003 hearing on the custody order commenced. See *Cameron* v. *Cameron*, 187 Conn. 163, 171, 444 A.2d 915 (1982); *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 753–54, 444 A.2d 196 (1982).

[6] The respondent claimed in the second motion that "she was denied a ten day hearing as required by [General Statutes] § 46b-129 (b) because the court, not being available for Friday July 25, 2003, and Monday July 28, 2003, for a continuation of the . . . hearing as required by statute, continued the trial dates to August 18, 2003." Thus, it is clear that the respondent's motion was directed to the issuance of an order pursuant to § 46b-129 (b) and was not directed to Judge Rubinow's ruling that the child remain in the custody of the commissioner pursuant to General Statutes § 46b-121 (b). The appeal in this case, therefore, does not concern whether § 46b-121 (b) was appropriately used to allow the continued custody of the child with the commissioner.

Judge Rubinow had de facto denied her request for a hearing that was to have been on the pending custody order conducted within ten days. See General Statutes § 46b-129 (d) (4).[7] On August 18, 2003, the respondent filed a second motion to disqualify Judge Rubinow.

On August 18, 20 and 21, 2003, the court, *Lopez, J.*, conducted the hearing that is the subject of this appeal. Judge Lopez vacated all prior orders of Judge Rubinow in the case and conducted a trial on the merits of whether the temporary custody order should be sustained. On August 25, 2003, the respondent filed a motion to dismiss the order on the ground that the commissioner had violated the ten day requirement of § 46b-129 (d). In her memorandum of decision dated December 19, 2003, Judge Lopez held that the court had jurisdiction to act on the order and found that the commissioner had satisfied her burden of proving by a preponderance of the evidence that the child was in immediate physical danger and that his immediate removal from his surroundings was necessary to ensure his safety. Accordingly, Judge Lopez sustained the temporary custody order issued by Judge Jongbloed on July 8, 2003.[8] Additional facts will be set forth as necessary.

## II

### THE EFFECT OF PRIOR RULINGS ON JURISDICTION

The respondent argues that Judge Lopez should not have vacated Judge Rubinow's order, which had

[7] In that motion, the respondent alleged that the court "commenced a hearing on the [order of temporary custody] and the neglect petition concurrently, despite the undersigned's objections, and continued the matter to August 18, 2003, for a continuation of the hearing." The motion also stated that the court "did not make a determination on July 24, 2003, whether the petitioner met its burden of proof to sustain the [custody order] and the child remains in the [commissioner's] custody."

[8] The court, *Lopez, J.*, denied the respondent's motion of July 29, 2003. The motions filed by the respondent thereafter were rendered moot by the judgment of that court.

vacated the ex parte order of temporary custody issued by Judge Jongbloed. The respondent claims that the vacation of the order of temporary custody by Judge Rubinow on July 24, 2003, was a final judgment, and that no appeal had been filed as of December 19, 2003, when Judge Lopez rendered a judgment sustaining Judge Jongbloed's temporary custody order.

We must determine whether a vacation of a temporary custody order is a final judgment for purposes of res judicata. We begin by noting that it is a well established principle that a temporary custody order is considered a final judgment for purposes of appeal. As our Supreme Court explained in *In re Shamika F.*, 256 Conn. 383, 773 A.2d 347 (2001), "temporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected . . . and, further . . . an immediate appeal is the only way to ensure the protection of the best interests of children." (Citation omitted; internal quotation marks omitted.) Id., 385.

While an order may be considered a final judgment for purposes of appeal, it does not follow that that order is a final judgment for purposes of res judicata. This fact is evidenced by the manner in which our Supreme Court first reasoned that a temporary custody order should be considered a final judgment for purposes of appeal. In *Madigan* v. *Madigan*, 224 Conn. 749, 753–54, 620 A.2d 1276 (1993), the Supreme Court applied the standard set forth in *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), to determine whether, in the context of a dissolution case, a temporary custody order constituted a final judgment for purposes of appeal. "That standard permits the immediate appealability of an order in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights

of the parties that further proceedings cannot affect them." (Internal quotation marks omitted.) *Madigan* v. *Madigan*, supra, 753. "Relying on the second prong of the *Curcio* test, [the court] concluded in *Madigan* that deny[ing] immediate relief to an aggrieved parent [would interfere] with the parent's custodial right over a significant period [of time] in a manner that [could not] be redressed by a later appeal. . . . Even a temporary custody order may have a significant impact on a subsequent permanent custody decision . . . [by] establish[ing] a foundation for a stable long-term relationship that becomes an important factor in determining what final custodial arrangements are in the best interests of the child. . . . [The court] concluded that temporary custody orders did so [conclude] the rights of the parties that further proceedings [could not] affect them . . . and, therefore, they were final for purposes of appeal." *In re Shamika F.*, supra, 256 Conn. 402.

The *Curcio* standard is invoked only where an otherwise interlocutory order or ruling is presented for appellate review, causing the appellate court first to determine whether it has jurisdiction to hear the appeal. Therefore, an order or ruling that is final for purposes of appeal pursuant to *Curcio* is implicitly *otherwise interlocutory*. We conclude that Judge Rubinow's vacation of the July 8, 2003 temporary custody order constituted an interlocutory order.[9] See *Moore* v. *Ganim*, 233 Conn. 557, 560, 660 A.2d 742 (1995) (noting that denial of temporary restraining order and vacation of previously granted temporary restraining order did not constitute final judgment). "[A] final judgment is one that ends litigation on the merits and leaves nothing for a court

---

[9] On the basis of the transcript quoted in footnote 4, it could be inferred that Judge Rubinow did not believe that her orders were final judgments not subject to change by another trial court.

to do but execute the judgment." *Ratner* v. *Willametz*, 9 Conn. App. 565, 573, 520 A.2d 621 (1987).

It is a well established principle that "[a] judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 130–31, 788 A.2d 83 (2002). A decision of a trial judge that is res judicata binds a subsequent judge, but a decision that is interlocutory does not limit the power of a subsequent judge to decide otherwise under appropriate circumstances. *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 403, 685 A.2d 1108 (1996), overruled in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 154–155, 735 A.2d 333 (1999) (en banc).

In this case, the respondent raised the issue of whether a temporary custody order should issue through, inter alia, her motion for the immediate return of her child dated July 29, 2003.[10] Once this issue was before Judge Lopez, she had the authority to vacate the prior order.[11] Id. Having vacated Judge Rubinow's order, which had vacated the ex parte, July 8, 2003 temporary custody order, Judge Lopez effectively revived the original petition for an order of temporary custody. Indeed, Judge Lopez could not reach the merits of the respondent's motions filed after July 24, 2003, without first vacating Judge Rubinow's July 24, 2003 order, because until Judge Lopez vacated the July 24 order, no petition

---

[10] See footnote 6.

[11] When Judge Lopez began the hearing on August 18, 2003, she believed that it was a continuation of the July 24, 2003 hearing and that the purpose of the hearing was to decide if an order of temporary custody should issue.

for an order of temporary custody existed. The respondent sought through her July 29, 2003 motion the immediate return of her child because of a violation of the allegedly mandatory provisions of § 46b-129 (d).

## III

## THE EFFECT OF § 46b-129 (d) (4) ON JURISDICTION

The respondent claims that Judge Lopez lacked jurisdiction to act on the temporary custody order because the respondent did not receive a hearing on the petition within ten days of the July 18, 2003 preliminary hearing. The respondent thus asserts that the language of § 46b-129 (d) (4) is mandatory not directory. The respondent admits that a hearing was held on July 24, 2003, but that the hearing before Judge Lopez on August 18, 2003, exceeded the ten day statutory period. A determination of a court involving subject matter jurisdiction is a question of law for which our review is plenary. *In re Shawn S.*, 262 Conn. 155, 164, 810 A.2d 799 (2002).

In this case, the ex parte temporary custody order was rendered on July 8, 2003. On July 18, 2003, Judge Rubinow conducted a preliminary hearing and scheduled a subsequent hearing for July 24, 2003, within ten days of the preliminary hearing.[12] The respondent contends that the August 18, 2003 hearing was on the neglect petition, not a continuation of the custody petition. The respondent also contends that when the August 18, 2003 hearing was held, certain provisions of § 46b-129 were violated. Section § 46b-129 (b) (2) (B) provides in relevant part that "[a] preliminary hearing on any ex parte custody order . . . issued by the court shall be held within ten days from the issuance of such order. . . ." Section 46b-129 (d) (4) provides in relevant

---

[12] At a preliminary hearing on an order of temporary custody, the respondent shall be advised of the right to a hearing "to be held within ten days from the date of the preliminary hearing if the hearing is pursuant to an ex parte order of temporary custody. . . ." Practice Book § 33a-7 (a) (6).

part that at the preliminary hearing, the court will "advise the parent . . . of the right to a hearing . . . to be held within ten days from the date of the preliminary hearing . . . ." The respondent claims that these provisions are mandatory.

We adhere to the principle of *In re Adrien C.*, 9 Conn. App. 506, 509–11, 519 A.2d 1241, cert. denied, 203 Conn. 802, 522 A.2d 292 (1987). Accordingly, we conclude that the use of the word "shall" within the statutory framework is directory, and that the court did not lack jurisdiction, even if it is assumed that the hearing on August 18, 2003, was not a continuation of the July 24, 2003 hearing and, therefore, not held within the time limits imposed by the statute. The use of the word "shall" does not invariably create a mandatory duty. Id., 510. When Judge Rubinow continued the case on July 24, 2003, she did so as a matter of convenience of the parties, not to eliminate the essence of the thing to be accomplished. See id. Furthermore, the statute does not state that a hearing not held within ten days of the preliminary hearing will be deemed invalid.[13]

## IV

### JUDGMENT SUSTAINING THE ORDER OF TEMPORARY CUSTODY

The respondent next contends that Judge Lopez improperly sustained the temporary custody order. Specifically, the respondent argues that (1) Judge Lopez improperly admitted evidence of a prior neglect proceeding because such evidence did not relate to the

---

[13] Our Supreme Court observed in *Pamela B.* v. *Ment*, 244 Conn. 296, 709 A.2d 1089 (1998), that delays in hearings required under General Statutes § 46b-129 (b) (4) regarding an ex parte order of temporary custody can implicate constitutional rights. In that case, the court noted that delaying an evidentiary hearing for seven months violated the plaintiff's state and federal constitutional rights. *Pamela B.* v. *Ment*, supra, 313. Nothing in *Pamela B.*, however, requires a conclusion that the language of § 46b-129 (b) (4) is mandatory rather than directory.

statutory predicates of § 46b-129 (a) and (2) the evidence presented demonstrated that the child's immediate surroundings subjected him neither to immediate danger nor to a risk of serious physical harm. We disagree.

The respondent's first argument is unavailing because this court previously has acknowledged the power of the trial court to take judicial notice of prior proceedings involving the department and the same child. See *In re Mark C.*, 28 Conn. App. 247, 253, 610 A.2d 181, cert. denied, 223 Conn. 922, 614 A.2d 823 (1992). If the court could take judicial notice of files in connection with earlier proceedings involved in this case, then it follows that it had the power to hear and to consider evidence concerning facts involved in those same proceedings.

We turn now to the respondent's second argument. We initially set forth the applicable law and our standard of review. Pursuant to § 46b-129 (b), the court may issue "an order ex parte vesting in some suitable agency or person the child's or youth's temporary care and custody" if it appears, on the basis of the petition and supporting affidavits, that there is reasonable cause to believe that "(1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) that as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety . . . ."

"At a subsequent hearing on an order of temporary custody, the proper standard of proof . . . is the normal civil standard of a fair preponderance of the evidence." (Internal quotation marks omitted.) *In re Kaurice B.*, 83 Conn. App. 519, 522, 850 A.2d 223 (2004). "We note that [a]ppellate review of a trial court's find-

ings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 523. With those principles in mind, we will review the evidence presented at the hearing on the order of temporary custody to determine whether the court's determination is supported by the evidence in the record.

On the basis of the evidence presented at the hearing, Judge Lopez reasonably could have found the following facts. Both the child and the respondent tested positive for marijuana at the child's birth. On July 29, 2002, the commissioner filed a neglect petition and a petition for an order of temporary custody. On August 2, 2002, the court, *Driscoll, J.*, adjudicated the child neglected and ordered that he remain with his parents under protective supervision until February 2, 2003. On January 21, 2003, the protective supervision was extended until August 2, 2003, due to the parents' noncompliance with substance abuse counseling and domestic violence counseling.

The respondent was convicted of assault in the third degree for an incident involving the child's father and sentenced to eighteen months imprisonment, execution suspended, with eighteen months probation. The conditions of her probation included anger management counseling and therapy and substance abuse counseling. A protective order dated July 23, 2001, was in effect, which prohibited the respondent from threatening,

harassing or assaulting the child's father. On February 3, 2003, the respondent and the child's father were involved in a domestic violence incident. The respondent sustained a black eye, a contusion to her head and an injury to her ear as a result of an earring being pulled from it. The respondent subsequently received assistance from a social worker, Teresa Butler, to secure housing. The respondent was first placed in a battered women's shelter. After two weeks, the shelter asked the respondent to leave as a result of her noncompliance with its rules. Specifically, the respondent failed to attend day programs and substance abuse treatment, missed curfew and left the shelter. The respondent then moved to the Holy Family Shelter, where again, after less than two weeks, she was asked to leave for similar noncompliance. The respondent then refused to enroll in the Fresh Start Program because it was too long. Thereafter, Butler secured a placement for the respondent at the Access Shelter. The respondent stayed there for one day. Evidence adduced at the hearing indicated that the respondent then boarded a bus for New York.

On April 21, 2003, a violation of probation warrant was issued against the respondent for her noncompliance with the court's orders. Specifically, the respondent failed to keep scheduled appointments, to notify the probation officer of any address changes, to participate in anger management counseling and to obtain permission before leaving the state. A judge found reasonable, probable cause and signed an order that the respondent violated probation. A hearing was pending whereby if the respondent was found to have violated her probation, then she would be incarcerated for eighteen months.

The commissioner initiated a petition for a ninety-six hour hold on the basis of the respondent's failure to address her domestic violence, substance abuse, and lack of housing and plans for the child. Unsure of

whether it had jurisdiction over the respondent in New York, the commissioner did not execute that hold. After confirming with the respondent's mother that the respondent and the child were in New York and would be staying with her, Butler made a referral to the department of social services in New York.

After visiting with the respondent and the child, the New York department of social services assured the Connecticut department that the respondent was going to follow through with services and to continue living with her mother, the child's grandmother. On the basis of these representations, on June 24, 2003, Judge Jongbloed vacated the order of protective supervision, and the commissioner withdrew the matter. The department then learned that the respondent had been seen in Connecticut with the child's father. On June 25, 2003, Butler went to the house of the child's father, where she found the father, the respondent and the child. The respondent did not deny being with the child's father during this period. After discovering that the respondent had been found with the father several more times, even though she represented that she was returning to New York, the commissioner sought an order of temporary custody, which was granted ex parte.

Judge Lopez also heard evidence at the hearing regarding the child's physical health and well-being. During the time that Butler was assigned to the case, she observed very little eye contact between the respondent and the child. She never observed the respondent holding the child to feed him. Instead, Butler observed the respondent propping up the child and giving him a bottle. The respondent was reminded by Butler to change the child's diapers, to hold and cuddle the child and to remove some of the child's clothing because he was sweating from being too hot.

Prior to being removed from the respondent's custody, the child displayed a flat affect. He did not smile

and had very low muscle tone. During the commotion on July 8, 2003, when he was removed from the respondent's custody, the child did not display any discomfort, nor did he cry. An evaluation indicated that the child was significantly delayed in development.

On the basis of the evidence, Judge Lopez concluded that the child would be subject to immediate physical danger from his surroundings if he were returned to the care and custody of his mother. We conclude that Judge Lopez' judgment sustaining the order of temporary custody was amply supported by the facts found.

The judgment is affirmed.

In this opinion the other judges concurred.