# IN RE SEVERINA D.*
## (AC 34204)

Beach, Bear and Sheldon, Js.

Argued June 5—officially released July 17, 2012**

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 17, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Philip N. Walker*, for the appellant (respondent father).

*Gregory T. D'Auria*, solicitor general, with whom were *Susan T. Pearlman*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (petitioner).

*Linda K. Herzner*, for the minor child.

### Opinion

BEAR, J. The respondent father, Patrick Z., appeals from the judgment of the trial court sustaining a December 7, 2011 ex parte order granting temporary custody of his daughter, Severina D., to the petitioner, the commissioner of children and families (commissioner).[1] On appeal, the respondent[2] claims that the court erred in sustaining the order of temporary custody because (1) the removal of Severina by the department of children

---

[1] What ultimately is at issue in any custody proceeding is the best interest of each child. See, e.g., General Statutes § 46b-56 (b). "[T]emporary custody orders are immediately appealable because an immediate appeal is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected . . . and, further, that an immediate appeal is the only way to ensure the protection of the best interests of children." (Citation omitted; internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 385, 773 A.2d 347 (2001).

[2] The respondent mother has filed a separate appeal, challenging the order of temporary custody as to Severina D. and a son, Shaun S. That opinion, *In re Shaun S.*, 137 Conn. App. 263, 48 A.3d 74 (2012), was released for publication on the same date as this opinion. We therefore refer in this opinion to the respondent father as the respondent.

and families (department) interfered with his constitutionally protected interests in family integrity, (2) the court committed clear error in finding that Severina was in immediate physical danger, (3) the court committed clear error in finding that Severina's safety was endangered and (4) the court committed clear error in finding that Severina's immediate removal from his custody was necessary to ensure her safety. We affirm the judgment of the trial court.[3]

The court did not file a written memorandum of decision in this case, electing, instead, to issue an oral decision from the bench.[4] The record reveals the following facts and procedural history. The department has had involvement with Severina's mother (mother) since 2007, after having received a referral alleging physical and medical neglect against the mother as to her other child, Shaun S., who was born in 2006.[5] Although those allegations were not substantiated, the department has continued to have involvement with the mother and her children, including issues regarding substance abuse, unsanitary living conditions, inadequate supervision, unaddressed mental health issues, domestic violence and the mother's exposure of the children to a known sex offender. In July, 2011, the department received a referral from the Enfield police department concerning Severina, born in 2010, and Shaun S., her half sibling, after their mother was charged with two counts of risk of injury to a child for having left them unattended in her vehicle for approximately twenty minutes while she went into two supermarkets to return cans and bottles.[6]

[3] The attorney for the minor children filed a petition statement in this appeal adopting the position of the commissioner.

[4] The respondent failed to file a signed copy of the court's decision with this court. Nevertheless, he has provided a transcript of the trial, which includes the court's oral decision.

[5] Shaun S. is not the child of the respondent.

[6] Koren Kermashek, a department social worker, who was assisting the family during November and December, 2011, testified that the day in question was "the hottest day of the summer . . . ."

Although the mother acknowledged to the department that she should not have left the children unattended in her vehicle in the summer heat, when asked by the department investigator why she had left the children in the vehicle, she responded: "You try carrying around a four year old and [an] eight month old." The department investigator reported that the mother failed to grasp the seriousness of her actions or the risk in which she had placed her children.

After being evicted from their apartment, the mother, the respondent and the children, on or about August 29, 2011, moved in with Christy D., the maternal grandmother of Shaun and Severina (maternal grandmother), who also had an extensive history with the department in connection with the mother and her younger half sibling, Corey. This history included nineteen referrals to the department that resulted in six substantiated allegations of physical or emotional neglect. When the family moved into the maternal grandmother's home, the home contained two red-tailed boa constrictor snakes, forty to fifty rats kept to feed the snakes,[7] four sugar gliders,[8] and several birds, dogs and cats. Severina, the respondent and the mother slept in a bedroom where the snakes were kept in a tank, and Shaun slept in a bedroom where two tanks full of rats were kept. Shaun was permitted to have physical contact with newly born rats, which have no teeth, while being supervised by the maternal grandmother, but, the maternal grandmother testified that, although Shaun is very interested in the rats, he is "not allowed to play with rats because they—they bite."

On September 6, 2011, the respondent and the mother were arrested after a domestic violence incident. The

[7] The maternal grandmother testified that each snake consumes as many as eight rats per feeding.

[8] According to Random House Unabridged Dictionary (2d Ed. 1993) p. 1901, a sugar glider is "a gliding possum . . . ."

respondent testified that the incident resulted from his being overwhelmed, the mother's lack of help with the children and her desire to go out with a friend. During the argument, the mother hit the respondent and grabbed his throat, and, in response, he grabbed her throat, ultimately leading to their arrest. Severina was present in the home during this altercation. The respondent also testified that after the police were called, he learned that the friend whom the mother had planned on seeing was her boyfriend, of whose existence he had been unaware. According to the respondent, he was charged with one count of breach of the peace and the mother was charged with two counts of breach of the peace following the incident. In connection with court proceedings for the domestic violence incident, the respondent agreed to attend a parenting education program. There also was evidence introduced concerning a website on which the mother had been offering prostitution services. Also, in October, 2011, the mother tested positive for marijuana, and she admitted to the department that she engaged in excessive drinking on the weekends and smoked K3 on a daily basis.[9]

On December 7, 2011, the commissioner filed a petition alleging that Severina was neglected because she

[9] Although not part of the appellate record, K3 is described as one of a number of products known as "synthetic marijuana." These products contain "chemicals called cannabinoids that are made to mimic the action of 9-tetrahydrocannabinol (THC), the main psychoactive ingredient of marijuana. They are powerful drugs that may cause severe side effects. They may also be called 'plant food' or 'herbal incense.' " New York City Department of Health and Hygiene, "Synthetic Marijuana (Cannabinoids), Frequently Asked Questions for Retailers," available at http://www.nyc.gov/html/doh/downloads/pdf/public/press12/synthetic-marijuana-faqs-for-retailers.pdf (last visited on July 12, 2012). "Using synthetic marijuana can cause increased heart rate, paranoid behavior, agitation, irritability, nausea and vomiting, confusion, drowsiness, headache, hypertension, electrolyte abnormalities, seizures and loss of consciousness. Severe side effects may include acute renal failure and significant negative effects to the cardiovascular and central nervous systems. Use of synthetic marijuana has also been linked to death." Id.

was being denied proper care and attention, physically, educationally, emotionally or morally, and she was being permitted to live under conditions, circumstances or associations injurious to her well-being. Additionally, the commissioner submitted an affidavit by Koren Kermashek, a department social worker, seeking out-of-home placement of Severina, containing averments that the mother had unresolved substance abuse and mental health issues that negatively impacted her ability to care for Severina appropriately, that she was participating in online illegal activity, namely, prostitution, and that she was not compliant with her substance abuse program, having tested positive for marijuana use and having admitted to drinking until she was drunk on the weekends. Kermashek also averred that the respondent and the mother were unable or unwilling to provide a safe, stable and nurturing environment for Severina, that they were unable or unwilling to provide a safe and sanitary living environment for her and that they had a history of domestic violence. Kermashek also submitted a report concerning the history of the department's contacts with the family and referring to the maternal grandmother's extensive history with the department. The commission alleged that the children were in immediate physical danger from their surroundings, that immediate removal from such surroundings was necessary to ensure their safety, that custody in the commissioner was necessary to safeguard Severina's welfare and that custody in Shaun's father, Richard O., was necessary to safeguard Shaun's welfare.

On December 7, 2011, the court issued an ex parte order granting temporary custody of Severina to the commissioner, finding that she was in immediate physical danger from her surroundings, that it was necessary for her temporary care and custody to be vested in the commissioner and that, under the circumstances, reasonable efforts to prevent or to eliminate the need

for her removal were not possible. On December 22 and 23, 2011, the court heard the parties concerning whether the order of temporary custody should be sustained or vacated, and, after the conclusion of the hearing, it issued its decision sustaining the order of temporary custody. The court found that the children had been subjected by the respondent and the mother to a "continuum of risks . . . combined with an appalling lack of judgment and understanding and appreciation for the risks that these children have been in" and that, because the parents' attitude was that the department's involvement was "basically B.S.," they did not cooperate with the department. Although the incident involving the children being left in the vehicle might have been enough for the court to grant custody to the commissioner, given that the children could have died, the court noted that the department decided to give the parents the opportunity to demonstrate that removal of the children was not necessary, but the parents were unsuccessful in demonstrating that. The court found that the mother had "a horrible, traumatic history for which she need[ed] very serious services and intensive treatment in order to get her children back" but, despite an order from the court in the risk of injury case for the mother to cooperate with the department, the mother failed to cooperate. The court found that the parents had a long history of being irresponsible, and the domestic violence incident demonstrated the parents' degree of volatility and defensiveness that permeated the case and increased the risks for the children. The court also found that the maternal grandmother had a horrific history concerning her treatment of her own children, and the decision of the mother and the respondent to move in with the maternal grandmother and the snakes and rats, which were kept in rooms in which the children slept, was another example of excruciatingly poor judgment. This appeal followed.

I

The respondent's first claim is that the department's allegedly coercive removal of Severina interfered with his constitutionally protected interests in family integrity. He relies on *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 284, 455 A.2d 1313 (1983), which cites *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972), in support of his claim that the state can intervene in a parent-child relationship only when the state's interest as parens patriae of a child becomes compelling, which occurs when the child is at imminent risk of harm. He then states that the department's coercive power to remove a child requires its compliance with General Statutes § 46b-129 (b),[10] both as to a showing of immediate necessity of removal to ensure the safety of the child and as to proof of the compelling interest that the child is at risk of harm. The respondent does not challenge the constitutionality of § 46b-129 (b) and, in fact, concedes that it expressly incorporates the limitations of immediacy and necessity, thereby establishing the factual prerequisites for the department's exercise of its removal power. He acknowledges that a court may sustain an order of temporary custody when the department has shown by a fair preponderance of the evidence that the requirements of § 46b-129 (b) are satisfied. He does not allege or explain, however, how the specific circumstances of the department's allegedly coercive removal of Severina pursuant to § 46b-129 (b)

---

[10] General Statutes § 46b-129 (b) provides in relevant part: "If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or subsequent thereto, that there is reasonable cause to believe that (1) the child . . . is in immediate physical danger from the child's . . . surroundings, and (2) that as a result of said conditions, the child's . . . safety is endangered and immediate removal from such surroundings is necessary to ensure the child's . . . safety, the court shall . . . (B) issue an order ex parte vesting the child's . . . temporary care and custody in a person related to the child . . . by blood or marriage or in some other person or suitable agency. . . ."

interfered with his constitutionally protected interests in family integrity or how the department's actions, rather than the court's actions, properly are raised in this appeal.[11]

Because of the respondent's failure to analyze and to brief adequately his constitutional claim to family integrity and the department's interference therewith, we consider the claim to have been abandoned. "It is well settled that [appellate courts] are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Keating* v. *Ferrandino*, 125 Conn. App. 601, 603, 10 A.3d 59 (2010); see, e.g., *State* v. *Vakilzaden*, 272 Conn. 762, 768 n.11, 865 A.2d 1155 (2005) (declining to review defendant's state constitutional claim where no independent analysis under state constitution was presented).

II

The respondent's second claim is that the court committed clear error in finding that Severina was in immediate physical danger. He argues that the only evidence in the record of physical danger to Severina was the July, 2011 incident in which the mother left Severina and Shaun unattended in her vehicle in the summer

---

[11] It was the court that granted the ex parte order pursuant to which the department removed the children from the mother and the respondent. The department, therefore, did not act "coercively" on its own, as it could have, for example, pursuant to General Statutes § 17a-101g (e) and (f).

heat. He further argues that the domestic violence incident in September, 2011, did not expose Severina to immediate physical injury because she was not present when it occurred. He acknowledges, however, the existence of the facts relied on by the court in sustaining the order of temporary custody, including the maternal grandmother's presence in the household, the presence of snakes and rats, the mother's alleged prostitution, the lack of cooperation on the part of the mother and the respondent, their volatility, defensiveness and irresponsibility, their lack of good judgment, their severely impaired judgment and their inability to exercise the level of judgment that would keep the children safe.

Our law concerning the application of the clear error doctrine is well established. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Bender* v. *Bender*, 292 Conn. 696, 728–29, 975 A.2d 636 (2009).

The respondent argues that "the [c]ourt's findings are, at best, a strong suspicion of physical danger of indeterminable pendency. However, strong suspicion is not proof by a fair preponderance of evidence." (Internal quotation marks omitted.) We disagree with this characterization of the court's findings and with the assertion that the court acted on the basis of "strong suspicion."

In *In re Nashiah C.*, 87 Conn. App. 210, 866 A.2d 669, cert. denied, 273 Conn. 926, 871 A.2d 1031 (2005), we set forth the relationship between an ex parte order of temporary custody and a subsequent contested hearing: "We initially set forth the applicable law and our standard of review. Pursuant to § 46b-129 (b), the court may issue an order ex parte vesting in some suitable agency or person the child's . . . temporary care and custody if it appears, on the basis of the petition and supporting affidavits, that there is reasonable cause to believe that (1) the child . . . is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's . . . surroundings, and (2) that as a result of said conditions, the child's . . . safety is endangered and immediate removal from such surroundings is necessary to ensure the child's . . . safety. . . . At a subsequent hearing on an order of temporary custody, the proper standard of proof . . . is the normal civil standard of a fair preponderance of the evidence. . . . We note that [a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) Id., 221–22; see *In re Kelsey M.*, 120 Conn. App. 537, 542–43, 992 A.2d 372 (2010).

In *Fish* v. *Fish*, 285 Conn. 24, 73–74, 939 A.2d 1040 (2008), our Supreme Court set forth the constitutional authority for use of the fair preponderance standard

in a temporary custody context: "Moreover, this court determined more than two decades ago that the fair preponderance standard is constitutionally permissible in temporary custody and neglect proceedings because the child's welfare and safety represents a strong countervailing interest in relative equipoise with the liberty interest of the parent. See *In re Juvenile Appeal (83-CD)*, supra, 189 Conn. 287 (when child's interest no longer coincides with that of parent, magnitude of parent's right to family integrity is diminished); see also *In re Juvenile Appeal (84-AB)*, 192 Conn. 254, 263–64, 471 A.2d 1380 (1984)."

In the present case, the court made ample findings by a fair preponderance of the evidence, as set forth previously in this opinion, that support its ultimate finding that Severina was in immediate physical danger from her surroundings. After our thorough review of the record in this case and the arguments of the respondent, we conclude that the respondent has failed to prove that the court committed clear error in finding that Severina was in immediate physical danger.

### III

The respondent's third claim is that the court committed clear error in finding that Severina's safety was endangered. This claim is based on the respondent's second claim that it was clear error for the court to have found that Severina was in immediate physical danger. Having rejected the respondent's second claim, we conclude that the respondent has failed to prove that the court committed clear error in finding that Severina's safety was endangered.

### IV

The respondent's fourth claim is that the court committed clear error in finding that Severina's immediate removal from her parents' custody was necessary to ensure her safety. The respondent asserts that the

department's power to remove children is limited to those cases in which the state's interest as parens patriae is compelling; the state's interest in removal becomes compelling only when the child is at risk of harm, and, for purposes of § 46b-129 (b), a finding of risk of harm requires a finding of immediate physical danger. He argues that there was no substantial evidence to show that Severina was in immediate physical danger and that her safety was endangered, and, therefore, her removal was unnecessary to ensure her safety. We disagree.

As stated previously, pursuant to § 46b-129 (b), the court may issue an ex parte custody order if it appears that there is reasonable cause to believe that the child is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's surroundings and, that as a result of said conditions, the child's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety. *In re Kelsey M.*, supra, 120 Conn. App. 542. At the subsequent hearing on an order of temporary custody, the proper standard of proof is a fair preponderance of the evidence. Id., 543.

The respondent contends that there was no evidence that Severina was in danger of immediate physical harm and, therefore, that the court improperly found that removal from the family home was necessary to ensure her safety. We disagree.

After our review of the court's findings in its oral decision and other facts conceded by the respondent in his voluntary testimony at the December 23, 2011 hearing, we conclude that the respondent has failed to persuade us that the court's finding that Severina's immediate removal from her parents' custody was necessary to ensure her safety was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.