******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE J.R.*
(AC 37980)

Gruendel, Keller and Prescott, Js.**

*Argued October 7—officially released November 17, 2015****

(Appeal from Superior Court, judicial district of Middlesex, Child Protection Session, Eschuk, J. [ex parte temporary custody order]; Rubinow, J. [judgment].)

*Patrick J. Heeran*, assigned counsel, with whom, on the brief, were *Erich H. Gaston* and *Alison P. Gaston*, for the appellant (respondent mother).

*Susmita M. Mansukhani*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

KELLER, J. The respondent mother, N.A. (respondent),[1] appeals from the grant of an order of temporary custody, which vested custody of her minor daughter, J.R., with the Commissioner of Children and Families. On appeal, the respondent claims that (1) the court improperly shifted the burden of proof of underlying facts from the petitioner to the respondent; and (2) there was insufficient evidence to support the grant of an order of temporary custody.[2] We affirm the judgment.

The petitioner executed a ninety-six hour hold on J.R. at 6 o'clock in the evening on February 26, 2015. The following day, the court granted the petitioner's motion for an ex parte order of temporary custody and vested custody in the petitioner. Beginning on March 13, 2015, the court held a contested hearing on whether to continue the order, which lasted three days.[3] On April 23, 2015, the court issued a memorandum of decision sustaining the order of temporary custody and finding facts that are set forth herein.

In its thorough and well reasoned decision, the court found the following facts that are relevant to this appeal. In 2012, J.R. lived with her parents, the respondent and B.R. Veronica Ron-Priola, a physician, referred to throughout the proceedings as "Dr. Ron," has been J.R.'s pediatrician since her birth. In 2012, when J.R. was seven years old, the respondent, who cleaned J.R.'s laundry regularly, began noticing stains on J.R.'s underwear. Although both of her parents knew about this, they did not bring J.R. to see Dr. Ron for treatment for two or three months. After she examined and performed tests on J.R., Dr. Ron diagnosed her with chlamydia. Dr. Ron concluded, despite J.R.'s initial denial, that she had been sexually abused, and notified both the Department of Children and Families and the respondent, who also told B.R. Dr. Ron then treated J.R.'s infection with an antibiotic that is considered curative because it is effective in 97 percent of cases. J.R. ultimately disclosed in a forensic interview that her uncle had molested her and two of her cousins—one of whom also tested positive for chlamydia—in 2012. One week after this disclosure, J.R.'s uncle fled the country. Despite her disclosures and having told her mother that she never wanted to play with her uncle again, however, J.R. never exhibited fear at the prospect of going to her aunt's and uncle's house. J.R. also attended and completed counseling.

In 2013, J.R., J.R.'s adult brother J, the respondent, and B.R. moved into a house together. Following B.R.'s back injury in July, 2014, B.R., as well as S.A., an aunt, began to supervise J.R. when the respondent was not at home. At about this time, J moved out of the house, although he continued to visit the family several times a week. J.T., an unrelated male adult, moved in. J briefly

resumed living at the house of the respondent and B.R. for a few weeks in late 2014 or early 2015. B.A., another aunt of J.R.'s, frequently visited the home of the respondent, and A, the cousin whom J.R. identified as also having been molested by the uncle who fled, stayed overnight at the home of the respondent. In sum, S.A., J.T., B.A., J, A, the respondent, and B.R. all had access to J.R. after her 2012 chlamydia diagnosis.

J.R. had annual physical exams in 2013 and 2014. She was apparently in good health and exhibited no symptoms of a sexually transmitted disease. In September, 2014, however, J.R. reported to the respondent that she had begun having vaginal discharge and that she "felt kind of hot and moist in her private parts." The respondent checked J.R.'s underwear while doing her laundry and observed stains. The respondent reported these developments to B.R. and expressed her concern to him at some point before January 23, 2015. To alleviate her discomfort, J.R. began a pattern of changing into lighter clothing and changing her underwear twice a day.

Despite all of these changes and despite J.R.'s previous medical history, the respondent and B.R. did not seek immediate medical attention for J.R., but instead waited until February 23, 2015, when the respondent brought J.R. to her prescheduled annual physical exam with Dr. Ron. When Dr. Ron asked the respondent and J.R. "if there were any concerns," the respondent answered only that J.R. had complained of ear pain the previous evening. Dr. Ron did discover an ear infection and prescribed an antibiotic for it. The respondent did not report J.R.'s genital symptoms. On examining J.R., however, Dr. Ron discovered that she had "abundant vaginal discharge" as well as vulval redness and erosion. Confronted with these unreported symptoms, the respondent stated that the discharge had been present for one month.

On receiving medical confirmation on February 25, 2015, that J.R. had chlamydia, Dr. Ron became concerned that J.R. had again suffered sexual abuse because J.R. was very unlikely to be suffering a recurrence of her 2012 infection after treatment and after having been symptom free for about two years. Dr. Ron called the respondent and told her that J.R. had chlamydia and that chlamydia is contracted only through sexual contact. Neither the respondent nor B.R. was able or willing to explain the origin of the new condition. As she was mandated by law to do, Dr. Ron reported J.R.'s illness to the department.[4] J.R. did not, however, identify an abuser either to Dr. Ron or to a multidisciplinary investigative team, each of whom interviewed her. As occurred when J.R. became infected in 2012, J.R.'s parents noted no changes in her behavior apart from her complaints relating to symptoms and her pattern of changing into lighter clothing.

On February 26, 2015, the petitioner executed a ninety-six hour hold on J.R., and the court granted the petitioner's ex parte motion for an order of temporary custody the following day and temporarily vested custody in the petitioner. In an affidavit in support of the motion for an order of temporary custody, a department social worker alleged that "[J.R.] tested positive for [c]hlamydia for the second time in a two year period while under the care of her parents. There is no identified perpetrator and the family was unable to identify how the child could have contracted this." Accordingly, the social worker alleged that J.R. would be "in immediate physical danger from her surroundings if she [were] placed in the care [of] either of her parents and that immediate removal from such surroundings [was] necessary to ensure [her] safety and further the conditions or circumstances surrounding the care of said child [require] that custody be immediately assumed to safeguard the welfare of said child." On March 3, 2015, Dr. Ron reconfirmed J.R.'s chlamydia diagnosis. Following further testing and confirmation on March 10, 2015, Dr. Ron prescribed a single dose of an antibiotic for J.R. to take under department supervision to cure her. Up to and through the contested custody hearing, Dr. Ron maintained great concern that J.R. might continue to be abused if she were returned to her parents.

I

Nominally, the respondent's principal claim on appeal is that the court improperly shifted to her the burden of proof with respect to the granting to the petitioner of the order of temporary custody. We disagree.

We begin our analysis with the standard of review for claims that the court has misallocated the burden of proof. "The question of whether a trial court has held a party to a less exacting standard of proof than the law requires is a legal one. . . . Accordingly, our review is plenary. . . . Similarly, plenary review applies to a question of misallocation of a burden of proof. . . . Furthermore, if it is not otherwise clear from the record that an improper standard was applied, the appellant's claim will fail on the basis of inadequate support in the record." (Citations omitted; internal quotation marks omitted.) *In re Jason R.*, 306 Conn. 438, 452–53, 51 A.3d 334 (2012). "[T]he burden of proof is always on the state when it seeks to remove children from the home." *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 295, 455 A.2d 1313 (1983).

There is no support in the court's memorandum of decision for the respondent's claim that the court shifted the burden of proof. To the contrary, the court referred explicitly at several points to the petitioner's burden of proof and to the petitioner's "substantial showing," by a fair preponderance of the evidence, that

if J.R. were returned to her surroundings, she more likely than not would be subjected to immediate physical danger. The court's decision also consistently relates the petitioner's evidence to the legal grounds that the petitioner sought to establish, implying that it was the petitioner who bore the burden of establishing those grounds. Furthermore, the court cites precedent, namely, *In re Kaurice B.*, 83 Conn. App. 519, 522–23, 850 A.2d 223 (2004), that requires the petitioner to bear the burden of proving the grounds for the granting of an order of temporary custody. Finally, the court's decision culminates unequivocally by finding that "[i]n sum, [the petitioner] *has met* [*her*] *burden of proving* that the [order of temporary custody] should be continued because [J.R.] was the victim of sexual abuse; acquired chlamydia as a result of the sexual abuse; and the respondent-parents are either unwilling to disclose how the abuse occurred or, as they claim, they do not know how the abuse occurred." (Emphasis added.) The respondent does not identify any language in the court's decision to suggest that the court required anyone other than the petitioner to bear the burden of proof as to the granting of the order of temporary custody. The respondent's claim fails because there is no support for its premise in the court's memorandum of decision.

## II

The substance of the respondent's principal claim appears to be that there was insufficient evidence to grant the order of temporary custody because the evidence did not show that J.R.'s 2015 infection was the result of new abuse, as opposed to a recurrence of her 2012 infection, and because even if the evidence did indicate a new infection, there was insufficient evidence to show that the individual responsible lived in J.R.'s household.[5] We disagree.

Our inquiry into the sufficiency of the evidence for granting the order of temporary custody is limited to determining whether the court committed clear error in making the statutorily required findings. *In re Severina D.*, 137 Conn. App. 283, 291–92, 48 A.3d 86 (2012). "The proper standard of proof in a trial on an order of temporary custody is the normal civil standard of a fair preponderance of the evidence. . . . We note that [a]ppellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . With those principles in mind, we will

review the evidence presented at the hearing on the [motion] for [an order] of temporary custody to determine whether the court's determination is supported by the evidence in the record." (Internal quotation marks omitted.) *In re Paul O.*, 125 Conn. App. 212, 218, 6 A.3d 1209 (2010).

The parents' pattern of inaction with respect to J.R.'s second infection was such that the court did not commit clear error by finding that J.R. was in immediate physical danger from her surroundings and that, as a result, continuation in her home was contrary to her welfare.[6] An order of temporary custody may be granted when "there is reasonable cause to believe that (1) the child or youth . . . is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety . . . ." General Statutes § 46b-129 (b). "Connecticut law is clear that, in the context of a hearing for an order of temporary custody pursuant to § 46b-129 (b), a finding of immediate physical danger is a prerequisite to the court's entry of a temporary order vesting custody of a child in one other than the child's parents." *In re Chronesca D.*, 126 Conn. App. 493, 495–96, 13 A.3d 1106 (2011).

Case law supports the proposition that an order of temporary custody is appropriate where, as here, a child has contracted a serious medical condition virtually certain to have originated in recent sexual abuse, yet her parent or parents neither seek prompt medical attention for her nor attempt to protect her from the abuser. In *In re Cassandra C.*, 316 Conn. 476, 112 A.3d 158 (2015), our Supreme Court affirmed an order of temporary custody when the mother of a seventeen year old girl repeatedly either failed to facilitate or even obstructed the girl's course of treatment for Hodgkin's lymphoma. See id., 482–87. In *In re Felicia D.*, 35 Conn. App. 490, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994), this court upheld a termination of parental rights when the mother of two young girls repeatedly allowed her daughters to interact with and be harmed by various male visitors to their home. Id., 501 ("When [one of the girls] exhibited symptoms that could have resulted only from sexual abuse, the respondent defended her husband who had been left to watch the girls. While the respondent did not inflict injury on her children, she had, despite warnings, exposed them to dangerous characters and failed to protect them." [Footnote omitted.]).

In this case, the court was confronted with a nine year old child who had contracted a genital infection that could only have arisen from sexual abuse and that had caused her to suffer readily identifiable symptoms for six months. Despite these alarming developments, and despite the fact that J.R. had contracted a similar

infection and had disclosed sexual abuse two years earlier, her parents each denied knowledge of the problem until only one month before its diagnosis at a routine physical examination. They made no attempts either to seek treatment or to identify J.R.'s abuser and isolate J.R. from him or her during any of these time periods, even though she had been sexually abused by a close relative in the recent past and had contracted the same infection as a result. An order of temporary custody was appropriate: a genital infection of chlamydia in a nine year old child and the sexual abuse that it implicated constituted an immediate physical danger, which, absent the identification of the perpetrator, and, given her parents' inaction after learning of J.R.'s symptoms, justified the removal from the home to prevent possible recurring sexual abuse that again would be met with parental indifference. See General Statutes § 46b-129 (b). The failure of J.R.'s parents to seek medical attention in a timely fashion, like that of the mother in *In re Cassandra C.*, supra, 316 Conn. 482–87, placed J.R. in "immediate physical danger . . . ." General Statutes § 46b-129 (b). The failure of J.R.'s parents to make any efforts to protect J.R. from her abuser, like that of the mother in *In re Felicia D.*, supra, 35 Conn. App. 501, similarly supports the court's decision to grant the order of temporary custody because the continuing presence of such an abuser constituted an ongoing and severe threat to J.R., "and . . . as a result . . . [J.R.'s] safety [was] endangered and immediate removal from such surroundings [was] necessary to ensure [her] safety . . . ." General Statutes § 46b-129 (b). The court did not commit clear error in making the findings necessary to grant the order of temporary custody.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** This appeal originally was argued before a panel of this court consisting of Judge Gruendel, Judge Keller and Justice Borden. Thereafter, Judge Prescott replaced Justice Borden. Judge Prescott has read the record and briefs, and listened to a recording of oral argument prior to participating in this decision.

*** November 17, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent father, B.R., was also named in the initial motion seeking an order of temporary custody. Because B.R. did not participate in this appeal, we refer to the respondent mother as the respondent. Furthermore, in accordance with the law and with our policy of protecting the privacy interests of children and of victims of sexual abuse, we decline to use the child's name or to identify others through whom her identity may be ascertained. See General Statutes § 46b-142 (b); Practice Book § 79a-12.

[2] We have divided our discussion of the respondent's first claim in two because, although it is briefed under a single point heading, it appears to make two analytically distinct claims. We decline to address the respondent's claim that the trial court violated her right to due process of law because the claim is not adequately briefed. See, e.g., *Clelford* v. *Bristol*, 150 Conn. App. 229, 230, 90 A.3d 998 (2014). Although the respondent's brief asserts

that the court violated her constitutional rights and invokes review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), her brief does not explain how the evidentiary issues that it identifies could amount to constitutional error, nor does her brief cite any authority that would support such a contention.

[3] The petitioner also filed a neglect petition on February 27, 2015. As of the date of this opinion, however, the petition has not yet gone to disposition; thus, the appeal is not yet moot. See *In re Forrest B.*, 109 Conn. App. 772, 776, 953 A.2d 887 (2008).

[4] See General Statutes § 17a-101 et seq. (requiring physicians, inter alia, who, "in the ordinary course of [their] employment or profession [have] reasonable cause to suspect or believe that any child under the age of eighteen years"; General Statutes § 17a-101a [a]; has suffered abuse to make oral and written reports detailing such abuse to the Commissioner of Children and Families or her designee).

[5] We take the respondent at her word that she "does not seek to retry the facts" of this case, and we therefore do not treat the respondent's claim as a request that we determine that the court's factual findings were clearly erroneous.

[6] Given the respondent's argument that the evidence was insufficient because the petitioner did not prove that any particular individual in J.R.'s home abused her, we emphasize that "an adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although [General Statutes] § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [i]t is not directed against them as parents, but rather is a finding that the children are neglected . . . ." (Internal quotation marks omitted.) *In re David L.*, 54 Conn. App. 185, 191–92, 733 A.2d 897 (1999). The same principle applies to a finding of "immediate physical danger from the child's . . . surroundings"; General Statutes § 46b-129 (b); which requires consideration of the nature and severity of the neglect or abuse alleged in the petition and whether the child will be safe if allowed to remain in the home for which the petition is pending.

"If it appears from the specific allegations of the petition and other verified affirmations of fact accompanying the petition and application, or subsequent thereto, that there is reasonable cause to believe that (1) the child or youth is suffering from serious physical illness or serious physical injury or is in immediate physical danger from the child's or youth's surroundings, and (2) as a result of said conditions, the child's or youth's safety is endangered and immediate removal from such surroundings is necessary to ensure the child's or youth's safety"; General Statutes § 46b-129 (b); the court is justified in granting an ex parte order of temporary custody, and, subsequently, in sustaining it after a contested hearing. See General Statutes § 46b-129 (f); Practice Book § 33a-7 (e).

Oftentimes, the facts alleged in support of the grounds for an adjudication of neglect in a neglect petition and in the accompanying summary of facts bear a significant similarity to the facts alleged in the verified affirmations of fact that accompany the application for an order of temporary custody. See General Statutes § 46b-129 (b) and (f); Practice Book §§ 33a-1 (b), 33a-6 and 33a-7.

In the present case, the court also found that it was far more likely that the sexual abuse and infection transmission to which J.R. was subject in late 2014 or early 2015 was perpetrated in her familial surroundings, and found it "highly improbable" that the abuse and infection occurred at school. It also found not credible the parents' claim that they provided J.R. with constant one on one supervision by themselves or with selected family members such that no recurrence of sexual abuse was possible.